**James HARRIS, Petitioner,**

v.

**Robert KUHLMAN, Warden, Woodbourne Correctional Facility, and Robert Abrams, Attorney General of the State of New York, Respondents.**

No. CV–84–2657 (JBW).

United States District Court,
E.D. New York.

Feb. 5, 1985.

Julius M. Wasserstein, Lasher & Wasserstein, New York City, for petitioner.

John Santucci, Dist. Atty., County of Queens, Kew Gardens, N.Y., for respondents; Robert Alexander, and Brian Bressman, Kew Gardens, N.Y., of counsel.

## MEMORANDUM and ORDER

WEINSTEIN, Chief Judge:

Petitioner seeks a writ of habeas corpus. 28 U.S.C. § 2254. Several difficult problems are presented. First, whether petitioner, having made repeated efforts (through his family and by letters) to contact his attorney during this time and to obtain relief from the Clerk of the Appellate Division, can be said to have exhausted available state remedies. Second, whether the failure of petitioner's court-appointed counsel to perfect his appeal to the Appellate Division within 7½ years is attributable to the state. Finally, whether petitioner's due process rights were violated when he was imprisoned for more than half of his sentence and was unable to perfect his appeal in the state courts during that time. For the reasons indicated below, each of these questions is answered in the affirmative and the writ is granted.

## I. PROCEDURAL HISTORY

Petitioner is presently incarcerated in the Woodbourne Correctional Facility of the New York State Department of Correctional Services. He was committed to this institution on May 23, 1977, having been convicted on each of two counts of robbery in the first degree and of criminal possession of a weapon in the second degree. For the robbery he was sentenced to 10–20 years; for the gun charge he was sentenced to 3½ to 7 years. All terms were to run concurrently, but consecutive to any time petitioner owed for having violated a prior parole.

On May 23, 1977, petitioner filed a Notice of Appeal. The Appellate Division of the Supreme Court of the State of New York, Second Department assigned William Hellerstein of the Legal Aid Society as counsel. N.Y. County Law Art. 18–B, § 722 et seq. (McKinney's 1972 & Supp.1984). Peti-

tioner received notice of this assignment on January 24, 1978 and was informed by the Clerk to direct any further inquiries to counsel.

On February 16, 1978, petitioner, having consulted with fellow inmates, petitioned the Supreme Court of New York to set aside his conviction on the basis of newly-discovered evidence and the ineffective assistance of counsel at trial. N.Y.Crim. Proc.L. § 440.10 (McKinney's 1972). The Supreme Court conducted a hearing on July 16, 1978. It denied his motion on October 16, 1978 and denied leave to appeal.

When the Legal Aid Society learned that one basis for the direct appeal was ineffectiveness of counsel at trial, it sought to be replaced as petitioner's counsel because the Society had defended him at trial. The court relieved the Legal Aid attorney on December 15, 1978 and assigned New Counsel. New Counsel was a former Assistant District Attorney in Queens County knowledgeable in state criminal law.

On June 19, 1984, seven full years after filing his original notice of appeal, petitioner requested that this court issue a writ of habeas corpus. A hearing was held on November 16 and 17, 1984.

## II. FACTS

Upon his appointment, New Counsel received a letter from the Appellate Division, as well as a memorandum specifying his obligations to his client and to the court. The instructions reminded counsel that, because he would be appealing a judgment entered after the taking of testimony, counsel had 120 days from the date a certified transcript was filed with the court to bring his appeal on for argument. Any request for an extension of time was to be submitted in writing prior to the expiration of 120 days. At about the same time, New Counsel received a copy of the trial transcript, the minutes of the arraignment and sentencing, and a copy of the Legal Aid Society's motion to be relieved. He did not receive a transcript of the hearing on the 440 motion until 1980. (Apparently he did

nothing to expedite preparation of that transcript.) Nor did he ever submit a request in writing for an extension of time in which to perfect the appeal.

When New Counsel was assigned petitioner's appeal, it represented the sixth appeal assigned to him by the court within an eight-month period. Those officials in charge of the 18–B Panel of the court provided this workload despite the fact that when New Counsel had applied for appointment to the Panel, he noted his lack of experience or training with appeals prior to that time. Following his assignment, New Counsel notified petitioner of his appointment. A hiatus of six years occurred during which he made no effort to perfect the appeal.

At the hearing before this court New Counsel explained that during this time he suffered from a period of depression caused by the death of close members of his family, including his mother, the severe illness of his father, his wife's miscarriage and subsequent pregnancies, as well as the difficulties of starting a law firm. Nevertheless, he was able during that same time to perfect an appeal before the Court of Appeals for the Second Circuit which has strict time controls. It is clear from the hearing that the Second Circuit appeal was given prompt attention by counsel because he knew that the federal Court of Appeals would not tolerate delay. In contrast, the Appellate Division, Second Department did not then monitor delays in appeals.

During this six-year period, New Counsel received no guidance or indication from the Appellate Division that the delay in perfecting his appeal was inordinate. The Chief Clerk of the Appellate Division, Second Department, testified that prior to 1983, there was no mechanism to monitor such delays and the court relied on attorneys to perfect appeals. On March 21, 1983, the Appellate Division, Second Department, promulgated a dismissal calendar, comparable to the system already in place in the Second Circuit, designed to rid the court of those cases not brought for hearing "within six months of the filing of the record or papers on which

the appeal is to be heard." Ap.Div.R. 670.-24 (eff. Mar. 23, 1983). The rule, however, was not retroactive and has not been applied to the backlog of appeals filed prior to 1983.

The testimony of Mr. William Hellerstein, the Attorney in Charge of the Criminal Appeals Bureau of the Legal Aid Society, made clear the effectiveness of a dismissal calendar. He testified that prior to the implementation of a dismissal calendar in the Second Department, appeals were perfected more expeditiously in the First Department, which had a dismissal calendar, than in the Second Department, which did not. Tr. at 66. Only the internal controls of the Legal Aid Society enabled it to maintain some balance. He also stated that the pressure of the dismissal calendar even on Legal Aid to perfect appeals was substantial. *Id.*

The Chief Clerk of the Appellate Division, Second Department, also testified that the first time he contacted New Counsel was on March 12, 1984, after receiving a letter from petitioner inquiring about the delay in his appeal. A deputy clerk wrote New Counsel and received a reply which stated that the appeal would be perfected by the end of April, 1984. It was not, and the Appellate Division, Second Department, attempted no further communication with New Counsel.

The Principal Appellate Office Assistant in charge of the 18–B Panel was called. She testified that the Panel did not follow-up to ascertain whether counsel had properly carried out their assignments. It should be noted that New Counsel testified that he had accepted additional assignments offered to him by the Panel even while he was guilty of gross delays in handling petitioner's case.

Testimony was also taken from the Chief of the Appeals Bureau of the Queens County District Attorney's Office. She stated that except for petitioner's original application to proceed *in forma pauperis*, no attorney had been assigned to his direct appeal until 1984 when he filed a petition in federal district court. An attorney from the District Attorney's Office had worked on petitioner's 440 motion in 1979.

The Chief of the Appeals Bureau also testified that the District Attorney's Office did not monitor all appeals and at no time would it make a motion to place a case such as petitioner's, which was inactive for seven years, on the dismissal calendar. She admitted that her office did monitor the appeals of those who made bail during a stay of execution while awaiting appeal.

Petitioner testified to his own actions while waiting for his appeal to be perfected. He indicated that he had always relied on court-appointed counsel and he had been directed by the Appellate Division to make all inquiries regarding his appeal to his attorney. He had attempted to contact New Counsel through family members and had then written to him twice, once in 1981 and again in 1982. Finally, prior to seeking relief in federal court, he had sought the assistance of the Appellate Division by writing to it. He had not requested other counsel because fellow inmates advised him that would delay his appeal several more years.

Based on the advice of some "jailhouse lawyers," petitioner commenced the instant proceeding on June 15, 1984. This court issued an order to show cause to respondent on June 20, 1984. The court appointed counsel from its Criminal Justice Act Panel of Attorneys, and inquired by telephone and telegram directed to New Counsel when the appeal would be perfected. New Counsel informed the court that he expected to submit his brief on August 1. In fact, it was not filed until August 22, 1984, six years and seven months after the case was assigned, and six years and three months after it was due.

The Queens District Attorney's Office did not file its brief until after the evidentiary hearing on this petition. At the hearing, this Court suggested to the Clerk of the Appellate Division, Second Department, that it would be appropriate to expedite hearing of the appeal. The case has, we are informed, been submitted without oral argument. Based on the well-known effi-

It is likely that a decision in this case will be handed down shortly by the Appellate Division. Nevertheless, in view of the extraordinary delay, this Memorandum and Order is being issued.

## III. LAW

■ There is no constitutional right to an appeal. *Abney v. United States*, 431 U.S. 651, 656, 97 S.Ct. 2034, 2038, 52 L.Ed.2d 651 (1977). Having made the right of appeal available, however, the state is obligated by the United States Constitution to avoid impeding effective access to the appellate process. *Rinaldi v. Yeager*, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966); *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); [*see also Evitts v. Lucey*, _____ U.S. _____, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985).]

While its protective power has been considerably eroded in recent years, the purpose of the Great Writ is still to test whether prisoners are detained in violation of their fundamental liberties. *Townsend v. Sain*, 372 U.S. 293, 311–12, 83 S.Ct. 745, 756–57, 9 L.Ed.2d 770 (1963). The writ should be granted where there is a fundamental violation of rights and "it appears that the applicant has exhausted the remedies available in the courts of the State," or that "there is either an absence of available State corrective process" or such process is "ineffective to protect the rights of the prisoner." 28 U.S.C. § 2254(b). Practical exhaustion and the lack of any effective state corrective process absent recourse to the federal courts exists.

### A. *Exhaustion of State Remedies*

■ Federal courts may not consider a petition for habeas corpus unless petitioner has exhausted his state remedies. *Rose v. Lundy*, 455 U.S. 509, 515–19, 102 S.Ct. 1198, 1201–03, 71 L.Ed.2d 379 (1982). Respondent relies upon *Ralls v. Manson*, 503 F.2d 491 (2d Cir.1974) (*per curiam*), for the proposition that petitioner has not com-

plied with the exhaustion requirement. *Ralls* involved a Connecticut prisoner serving a life sentence who filed a timely notice of appeal upon his conviction for murder. He had specifically requested a particular attorney to prosecute his appeal. Three and one-half years passed, during which various procedures were followed as required by the Connecticut Practice Book §§ 696 and 672 to perfect Ralls' appeal. The appeal remained unheard. The district court granted Ralls' petition for a writ of habeas corpus and ordered that he be released unless the State of Connecticut granted him a retrial within 60 days. *Ralls*, 375 F.Supp. 1271 (D.Conn.1974). The Second Circuit reversed, holding that Ralls had failed to exhaust state remedies. It found that an effective corrective process was available to Ralls in the Connecticut Practice Book. *Ralls*, 503 F.2d at 493; *but cf. Roberson v. Connecticut*, 501 F.2d 305 (2d Cir.1974) (waiving exhaustion requirement after undue delay in state appellate process).

■ *Ralls* is distinguishable from the present case on several grounds. First, petitioner in this case did not choose his counsel—the state made the choice from its Panel. Second, counsel in *Ralls* apparently made attempts to perfect his appeal and present the issues to the Connecticut Supreme Court. Here, counsel made no attempt to perfect the appeal until this Court made it clear that the delay was intolerable. Third, the Second Circuit found that Connecticut provided a procedure for relief; New York offered no similar mechanism until it provided a dismissal calendar in March, 1983. That calendar had no effect on petitioner's case because his appeal had been filed before the implementation of the calendar. Fourth, Ralls raised all of his appealable state claims with the assistance of his counsel before the federal district court. Here, petitioner raises only the issue of the interminable wait for his appeal.

The instant case also differs from *Cousart v. Hammock*, 580 F.Supp. 259 (E.D.N. Y.), *aff'd*, 745 F.2d 776 (2d Cir.1984), in which petitioner managed to perfect a state

court appeal, obtained a reversal and then challenged his retrial through a habeas proceeding in federal district court. Here, the State, through the inadequate appeals process in place at the time of petitioner's conviction, effectively blocked petitioner's ability to exhaust his state remedies. Under these circumstances, the exhaustion requirement does not preclude recourse to federal court. As recently noted in *United States ex rel. Hankins v. Wicker*, 582 F.Supp. 180, 182 (W.D.Pa.1984): "If an appropriate remedy does not exist or its utilization is frustrated in the state system, and the door to the federal court is closed by virtue of the exhaustion requirement, there exists no forum for the consideration of petitioner's constitutional claims." In *Hankins*, the court found a mere 33-month delay an adequate reason for its consideration of Hankins' petition. More than 90 months have passed since petitioner was convicted in New York State court.

### B. State Responsibility for Inadequacy of Petitioner's Counsel

Respondent argues, however, that the inability to exhaust state remedies arose from counsel's incompetence, not the state's. This argument amounts to the contention that any violation of petitioner's due process rights that may have occurred was not a result of state action.

There can be little question that ineffective assistance of counsel and failure of the state to correct the deficiency constitute state action. The Supreme Court implicitly addressed this issue in *Anders v. State of California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), which held that a court-appointed attorney's letter stating that an appeal lacked merit, and the state procedure it triggered, could be redressed through habeas corpus. In *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the Court explicitly concluded that alleged ineffectiveness of retained counsel amounted to sufficient state participation. *Id.* at 342–46; 100 S.Ct. at 1715–16. State involvement is even greater when counsel is appointed. *See Pass-*

*more v. Estelle*, 607 F.2d 662, 663 (5th Cir.1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2155, 64 L.Ed.2d 789 (1980); *Cf. Cousart v. Hammock*, 745 F.2d 776, 777 n. 1 (2d Cir.1984).

When the state has assigned ineffective counsel resulting in an inordinate delay in perfecting a direct appeal and extended imprisonment for petitioner, it must assume responsibility. *Cf. Cuyler*, 446 U.S. at 343, 100 S.Ct. at 1715 (state participation in ineffective assistance of counsel may be an unconstitutional deprivation of liberty). The state has acknowledged its responsibility to persons such as petitioner by recognizing the obligation during trial to dismiss an incompetent defense attorney. *People v. Medina* 44 N.Y.2d 199, 207–08, 404 N.Y.S.2d 588, 592–93, 375 N.E.2d 768 (1978). Inauguration of a dismissal calendar fulfills that obligation for persons commencing appeals after 1983. Moreover, the 18–B Panel officials responsible for the assignment of counsel neglected to consider counsel's ability and experience when it assigned him six appeals within eight months. The state in this case had the ability to protect petitioner's rights, but it did not do so in the 7½ years he was in custody. The state cannot complain of lack of exhaustion when it itself was responsible for this failure. *See Breazeale v. Bradley*, 582 F.2d 5, 6 (5th Cir.1978) (delay of state remedy for over a year amounted to "a prolonged sleep, [which] in state remedies as in the rest of us, may safely be said to evince exhaustion"); *see also Pool v. Wyrick*, 703 F.2d 1064, 1066 (8th Cir. 1983); *Wade v. Lockhart*, 674 F.2d 721, 722 (8th Cir.1982); *Sapienza v. Vincent*, 534 F.2d 1007, 1010 (2d Cir.1976).

Petitioner's request for habeas corpus relief is appropriate. Petitioner was at the mercy of the state and its procedures that provided for the appointment of his counsel. Not only did that system fail to work, but those who were responsible for the system and the court to which he had appealed had a mechanism available—the dismissal calendar—that would have revealed the ineffectiveness of petitioner's

counsel. The obligation to monitor its own officers and procedures is constitutionally imposed and a recognized obligation of New York State courts. *See People v. Medina, supra,* 44 N.Y.2d at 207, 404 N.Y. S.2d at 593, 375 N.E.2d 768 (incumbent upon the court to prevent adverse effects of counsel's incompetence).

### C. *Right to Relief*

██ A delay in adjudicating an appeal may constitute a denial of due process and equal protection. *United States ex rel. Hankins v. Wicker,* 582 F.Supp. 180, 183–85 (W.D.Pa.1984). The Supreme Court in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), sets forth the criteria to be utilized where delay is the basis of the claim for relief. Although a speedy trial case, the analysis is applicable to appeals. *Doescher v. Estelle,* 454 F.Supp. 943, 947 & n. 1 (N.D.Tex.1978).

██ First, has petitioner effectively waived his right by failing properly to assert it? 407 U.S. at 528, 92 S.Ct. at 2191. Respondent argues that petitioner in this case failed to assert his right to change counsel by petitioning the court. Petitioner was powerless to remedy this delay caused by state action. Respondent asserts that petitioner's *pro se* petition and his previous change of counsel are evidence of his ability. In fact, replacement of The Legal Aid Society was initiated by the Society, not by petitioner. Petitioner was instructed at that time and earlier to direct all inquiries regarding his direct appeal to counsel and was not informed of his right to petition the court to change counsel. He was probably correctly advised by fellow prisoners that if he had requested a change of representation, he was inviting additional delay and frustration. *See Barker v. Wingo,* 407 U.S. 514, 529, 92 S.Ct. 2182, 2191 (burden on court and counsel to prevent undue delays); *Gaines v. Manson,* 194 Conn. 510, 481 A.2d 1084, 1093 (1984) (ordinarily it is counsel who is responsible for asserting petitioner's rights).

██ Second, is the length of the delay excessive? 407 U.S. at 530–31, 92 S.Ct.

at 2192. Where the delay between conviction and the hearing of an appeal exceeds 50 percent of a petitioner's ten year minimum sentence, the court can assume that the delay is prejudicial. *Cf. Shelton v. Heard,* 696 F.2d 1127 (5th Cir.1983) (four years of six-year sentence served pending appeal). Petitioner is entitled to a "swift vindication" of his rights once the court has agreed to hear him. *Cf. Galtieri v. Wainwright,* 582 F.2d 348, 354 (5th Cir.1978) (exceptions to exhaustion doctrine illustrate tension between protecting constitutional rights and adhering to principles of comity).

██ Third, are there acceptable reasons for this delay? 407 U.S. at 531, 92 S.Ct. at 2192. Here, the core problem was an institutional defect. The state at all times had the means available to avoid excessive delay—the dismissal calendar with its imposition of "substantial pressure" on attorneys with pending appeals. This device was well known since it had been in use both in the Appellate Division, First Department, and in the Court of Appeals for the Second Circuit. It was ultimately adopted by the Second Department, but for no acceptable reason it was not made applicable to pending appeals. Without the dismissal calendar, petitioner found himself in the hands of an inexperienced appellate attorney who, despite having informed the 18–B Panel of this inexperience, received numerous appeals in a short period of time when due to his personal difficulties he was not capable of meeting even ordinary demands. The state's failure to screen, administer, and monitor Panel attorneys, rather than forming a justifiable excuse for delay, infringed petitioner's due process and equal protection rights. *Cf. Gaines v. Manson,* 194 Conn. 510, 481 A.2d at 1094 (delayed appeals resulting from overworked and understaffed Public Defender's Office constituted violation of Fourteenth Amendment).

██ The final reason for the delay was quite clearly gross ineffectiveness of petitioner's counsel. By any measure, counsel's failure to perfect the appeal must be considered ineffective assistance. [*Evitts*

*v. Lucey,* ____ U.S. ____, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985)]. *See Strickland v. Washington,* — U.S. —, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) ("The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."). New Counsel failed to provide "reasonably effective assistance" in prosecuting the appeal promptly. *Strickland v. Washington, supra,* 104 S.Ct. at 2064; *Gulliver v. Dalsheim,* 739 F.2d 104, 107 (2d Cir.1984). *See also People v. Baldi,* 54 N.Y.2d 137, 151–52, 444 N.Y.S.2d 893, 901, 429 N.E.2d 400 (1981).

Fourth, was there prejudice to petitioner? 407 U.S. at 532, 92 S.Ct. at 2193. *Cf. Strickland,* 104 S.Ct. at 2068 (appropriate test for prejudice is that "but for counsel's unprofessional errors, the result of the proceeding would have been different."). The Supreme Court has identified three interests that might be prejudiced: preventing unnecessary pretrial incarceration; minimizing anxiety and concern of the accused; and avoiding impairment to the accused's defense. *Barker v. Wingo,* 407 U.S. 514, 532, 92 S.Ct. 2182, 2193, 33 L.Ed.2d 101 (1972).

While perusal of petitioner's state claims suggests that there is very little chance of a reversal, petitioner has clearly suffered severe anxiety and concern as a result of the long delay. *Petition of Williams,* 378 Mass. 623, 626, 393 N.E.2d 353, 355 (1979). This is a form of unacceptable punishment. In addition, should petitioner receive a retrial, the newly-discovered evidence that forms the basis of his appeal may have grown stale after seven years. *Compare Cousart v. Hammock, supra,* 745 F.2d at 778.

It would be inappropriate to foreclose the state appellate courts from deciding the case now that petitioner's counsel has filed a brief apparently raising the appropriate issues on appeal and the matter is *sub judice* in the state court. *Cf. Barnes v. Jones,* 665 F.2d 427 (2d Cir.1981), *rev'd on*

*other grounds,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); *Pressley v. Wainwright,* 540 F.2d 818 (5th Cir.1976), *cert. denied,* 430 U.S. 987, 97 S.Ct. 1688, 52 L.Ed.2d 383 (1977). The petitioner is ordered released unless the Appellate Division has decided his appeal within sixty days from the date of this Order. This decision is stayed pending an appeal to the Court of Appeals for the Second Circuit.

SO ORDERED.