**Homer Aki MATHIS, Appellant,**

v.

**David HOOD, Superintendent, Otisville Correctional Facility, Appellee.**

**No. 668, Docket 87–2420.**

United States Court of Appeals, Second Circuit.

Argued Jan. 13, 1988.

Decided July 14, 1988.

Charles E.F. Millard, Jr., New York City (Davis Polk & Wardwell, New York City, Richard Goldstein, Ogden N. Lewis, of counsel), for appellant.

Lawrence S. Kahn, Deputy Sol. Gen., New York City (Robert Abrams, Atty. Gen., State of N.Y., of counsel), for State of N.Y. as amicus curiae.

Before LUMBARD, CARDAMONE, and PRATT, Circuit Judges.

LUMBARD, Circuit Judge:

On August 27, 1987, Homer Aki Mathis filed a petition for a writ of habeas corpus in the Southern District alleging that the state's five-and-one-half year delay in deciding his appeal constituted a denial of due process. By judgment entered September 25, 1987, Judge Daronco dismissed the petition for failure to exhaust state remedies. The district court granted petitioner's request for a certificate of probable cause.

Mathis contends that exhaustion of state remedies is not required because (1) the delay was attributable to the state's court system and (2) there was an absence of available state corrective process, and that process, even if available, would have been ineffective in protecting his rights. He further points out that his numerous letters to the Appellate Division of the First Judicial Department alerting it to the delay

satisfies the exhaustion requirement. Because we agree with petitioner that he exhausted state remedies to the extent they were available and effective, we reverse.

## I.

On May 28, 1981, Mathis was found guilty, after a jury trial in New York County, of four counts of robbery in the first degree. He was sentenced on October 5, 1981, to four concurrent terms of ten to twenty years.

Mathis filed a notice of appeal on October 13, 1981. On November 17, the Appellate Division granted his request to prosecute his appeal as an impoverished individual, directed the trial court stenographers to produce two copies of the trial transcript within 20 days, appointed the Legal Aid Society to act as appellate counsel, and extended the time to perfect the appeal until 120 days from the filing of the record.

The trial minutes were not filed for over 15 months. During this period Mathis wrote a number of letters to Legal Aid inquiring about the status of the case and asking why no attorney had been assigned to it. Legal Aid responded only that it had not yet received the minutes. About one month after the complete minutes were filed on March 2, 1983, Legal Aid received a copy.

Legal Aid had represented Mathis's co-defendant at trial. Consequently, on April 7, 1983, Legal Aid notified Mathis that it had "recently discovered" a conflict of interest and that it would ask the Appellate Division to be relieved as assigned counsel from the case.

On May 17, 1983, the Appellate Division granted Legal Aid's request and selected Peter F. Anderson from the 18–B panel, a list of lawyers who handle appeals for a fee, to represent Mathis. The trial minutes were forwarded to Anderson later that month. Five months later, on October 14, 1983, Anderson sent Mathis a brief letter promising to file the appeal within the next three months.

On October 31, 1983, the Deputy Clerk of the Appellate Division informed Mathis that his appeal was to be placed on the dismissal calendar. By letter dated November 1, 1983, Mathis requested "an enlargement of time" to file the brief and asked the court to "get in touch with [his] councel [sic] and inform him of this particular situation...."

After writing several unanswered letters to Anderson about the appeal and enlisting the aid of the inmate legal service, Mathis contacted the Appellate Division and asked the Clerk to look into the delay. The Clerk responded only that his letters were being forwarded to Anderson.

Since no brief had been filed by Anderson, the Deputy Clerk informed Mathis that his appeal was again to be placed on the dismissal calendar as of June 7, 1984. Mathis wrote a letter to the court, dated May 24, 1984, explaining that the delay was due to Anderson's inaction and asking that Anderson be replaced. Six weeks later, upon the court's own motion, Anderson was replaced with another attorney, Ruben S. Schofield, who was directed to perfect the appeal within 120 days of receipt of the record.

Schofield proved to be equally dilatory. During the period of his appointment, Mathis wrote to him many times. Finally, on June 10, 1985, eleven months after Schofield was appointed, Mathis filed a *pro se* civil rights action under 42 U.S.C. § 1983 in the Southern District seeking damages against the Clerk of the Appellate Division and individual stenographers. Judge Sweet ordered the appointment of counsel. The case was eventually transferred to Judge Daronco who allowed Mathis to amend the complaint to make it a class action on behalf of the hundreds of indigent prisoners suffering the same type of treatment in the First Department.

Schofield finally filed a brief in November, 1986, after Mathis filed a grievance with the Disciplinary Committee of the First Department. The state did not file opposing papers until August 20, 1987. Mathis then filed this habeas corpus petition on August 27, 1987, contending that the delay in the briefing, hearing and deciding of the appeal violated his rights under

the federal Due Process Clause. In a Memorandum Order dated September 16, Judge Daronco dismissed the petition for failure to exhaust state remedies. According to the district court, Mathis must first have pursued a writ of error *coram nobis* in the state court before a federal court may entertain the claim.

■ On October 20, 1987, over six years after his appeal was filed, the Appellate Division affirmed Mathis's conviction without opinion. The state now contends that the appeal is moot. We disagree. Mathis does not seek retrial, but rather seeks unconditional release from custody, a remedy which is still available to him even though his appeal has at last been decided.

## II.

■ Although the six-year delay experienced by Mathis is shocking, unfortunately it is not unusual in the First and Second Departments of the Appellate Division. "There is a crisis in the First and Second Departments. Because of the extraordinary delays which infect the system, many indigents have effectively been denied their right to appeal. As a matter of routine, prisoners frequently serve their sentences before their appeals are even heard." *The Crisis in Indigent Appeals in the First and Second Departments*, by the Comm. on Criminal Advocacy of the Association of the Bar of the City of New York (April 16, 1985).

It is against this backdrop that we consider the district court's conclusion that petitioner had not exhausted his state remedies because he had a viable state remedy available to him in the form of a writ of *coram nobis*. For the reasons set forth below, we disagree.

Under 28 U.S.C. § 2254(b), a petition for a writ of habeas corpus:

shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or *that there is either an absence of available state corrective process or the existence of circumstances rendering*

*such process ineffective to protect the rights of the prisoner.* (emphasis added)

It is unclear whether under New York law a writ of error *coram nobis* could have been used to bring the delay to the attention of the First Department. However, even assuming that the writ was available, circumstances were such that the use of the writ would have been ineffective to protect Mathis' rights in this case.

In New York, the common law writ of error *coram nobis* is essentially codified in Criminal Procedure Law ("CPL") § 440.10. This section, entitled "Motion to vacate judgment," sets forth the instances in which collateral review may be had including those traditionally encompassed by the writ of habeas corpus. *See* CPL § 440.10(1)(a)–(h). All of the eight grounds designated in subsection 1 refer to a *judgment* and specify on what grounds it may be attacked. The Practice Commentary makes clear that the challenge must be made in the court which rendered the judgment in question. Clearly, § 440.10 affords petitioner no relief since it is from the lack of any disposition in the Appellate Division that he seeks relief. *See People v. Bachert*, 69 N.Y.2d 593, 597, 509 N.E.2d 318, 320, 516 N.Y.S.2d 623, 625 (1987) (CPL § 440.10 unavailable to raise claim of ineffectiveness of appellate counsel because "[a]ppellate courts do not render judgments of conviction; they only affect them.")

As noted in *People v. Bachert, supra,* the common law writ of *coram nobis* survived codification and has been expanded "when necessary to afford the defendant a remedy when no other avenue of judicial relief appeared available." 69 N.Y.2d at 598, 509 N.E.2d 318, 516 N.Y.S.2d 623 (quoting *People v. Hairston*, 10 N.Y.2d 92, 93–94, 176 N.E.2d 90, 217 N.Y.S.2d 77 (1961)). However, the New York Court of Appeals also pointed out that *"[c]oram nobis* proceedings have traditionally been 'addressed [in] the court which rendered the judgment or order from which relief is sought.'" 69 N.Y.2d at 599, 509 N.E.2d 318, 516 N.Y.S.2d 623 (quoting *People ex rel. Douglas v. Vincent*, 50 N.Y.2d 901, 905, 409 N.E.2d 990, 431 N.Y.S.2d 518

(1980)). Thus, it appears that there still must be an Appellate Division decision to challenge before the writ may be employed. For instance, the *Bachert* court found that the proper vehicle for bringing a claim of ineffectiveness of appellate counsel was a writ of error *coram nobis* addressed to the appellate division which *affirmed* the original conviction. *Id.* And even in *People v. Adams,* 12 N.Y.2d 417, 190 N.E.2d 529, 240 N.Y.S.2d 155 (1963), where the Court of Appeals approved the use of *coram nobis* to review a defendant's failure to obtain appellate review, the appellate division had dismissed defendant's appeal for failure to prosecute.

In the case before us, the First Department had rendered no decision when petitioner sought federal habeas corpus review. Consequently, it appears that resort to a writ of error *coram nobis* would have been inappropriate.

In any event, given the situation in the First Department faced by many prisoners who are represented by appointed counsel, further attempts to seek relief from the delay in the Appellate Division would likely have been futile. Mathis brought the delay to the attention of the First Department on numerous occasions. In addition, his appeal appeared on the dismissal calendar, not once, but twice. It is speculative at best to assume that merely adding the words *"coram nobis"* to his letters would have induced the Appellate Division to respond differently.

We are sympathetic to the problems associated with processing the staggering number of indigent appeals in the state system. We are confident that the state courts are fully aware of the situation and of the measures required to alleviate the situation. Meanwhile, federal habeas review is available to protect indigent prisoners' rights to appeal.

Finding that there is no state remedy available to petitioner and that even if such remedy existed, circumstances render the state corrective process ineffective, we remand the case to the district court to address the merits of petitioner's due process claim and determine what relief, if any, may be available.