**Norman SIMMONS, Petitioner,**

v.

**Edward F. REYNOLDS, Superintendent, Green Haven Correctional Facility, and The People of the State of New York, Respondents.**

No. 88 C 2909.

United States District Court,
E.D. New York.

March 15, 1989.

Norman Simmons, Rome, N.Y., pro se.

Elizabeth Holtzman, Dist. Atty., Brooklyn, N.Y. (Jessica Hecht, Asst. Dist. Atty., of counsel), for respondents.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2254 (1982), claiming that his court-appointed counsel's failure to perfect his appeal for six years denied him due process of law and effective assistance of counsel.

## I.

A Kings County grand jury indicted petitioner in 1980 on one count of second-degree murder and one count of criminal possession of a weapon in the second degree. He was then fifteen years old. His first trial resulted in a hung jury. After a second trial, he was found guilty of second-degree murder, and on July 14, 1982 sentenced as a juvenile to nine years to life.

Petitioner filed a timely notice of appeal on July 15, 1982. On October 12, 1982, the Appellate Division, Second Department, assigned the Legal Aid Society to represent him on appeal.

Having represented his co-defendant at trial, the Legal Aid Society perceived a conflict of interest, and on January 4, 1983 obtained leave from the Appellate Division to be relieved. By the same order the court appointed Stanley Shapiro, Esq., a member of the 18–B panel, to represent petitioner. About March 11, 1983 petitioner learned of the appointment.

Despite frequent telephone inquiries from petitioner, his family, and his inmate caseworker over the next few years, Shapiro was grossly dilatory in prosecuting the appeal. His only formal communication with petitioner was in May 1983, when in response to a telephone call from petitioner he wrote that he would begin work on the appeal in September 1983.

When September arrived without any word from Shapiro, petitioner again telephoned and learned that Shapiro had not filed an appeal brief because he had not yet obtained a copy of the trial minutes.

In May 1984, becoming dissatisfied with Shapiro, petitioner wrote to the Managing Attorney at the Legal Aid Society and the Kings County District Attorney to enlist their help in obtaining the trial minutes. The District Attorney's Office told him to write the Appellate Division. Both petitioner and the District Attorney's Office sent copies of their respective letters to the Appellate Division.

On June 7, 1984, he received a letter from Mark Cogan of the Legal Aid Society, then handling the appeal for petitioner's co-defendant. Cogan wrote that he would send a copy of the trial transcripts to Shapiro if petitioner would send him a check for $50.00, adding: "At only 6 cents per page, you will truly find this to be a bargain rate."

Petitioner sent a check to Cogan, who apparently sent the minutes to Shapiro, who still failed to perfect petitioner's appeal.

Petitioner and his brother then applied for help to Marion Beeler, an Ombudswoman with the New York State Division of Youth. In May 1985 she wrote to Shapiro on petitioner's behalf to find out the cause of the delay. Shapiro responded that Cogan was using the transcripts from the first trial, which had resulted in a hung jury, to prepare an appeal brief for the co-defendant, and that Shapiro would prepare a brief when he received those transcripts from Cogan.

In July 1985, petitioner wrote to Cogan offering to pay for photocopying the transcript of the first trial so that a copy could be forwarded to Shapiro without delay. Cogan replied that he no longer had the transcript, having filed an appeal brief for his client and served the trial minutes on the District Attorney.

In August 1985, petitioner again wrote to Beeler and Shapiro to ask them to expedite the appeal. He received no response. Two months later he was transferred from the custody of the Division of Youth to that of the New York State Department of Corrections. At the Elmira Reception Center an inmate law clerk allegedly told him that if he changed lawyers his appeal would be delayed. His family continued to telephone Shapiro, who assured them that he was working on petitioner's appeal.

Meantime, in May 1985, the Clerk's Office of the Appellate Division, Second Department, became aware through a periodic review of its lists of court-appointed attorneys that Shapiro had failed to perfect a number of appeals assigned to him. The Clerk's Office also received that month a copy of Beeler's letter to Shapiro.

On May 21, 1985 Arnold Edman, Deputy Clerk of the Appellate Division, Second Department, wrote to Shapiro requesting that he advise the Clerk's Office of the status of petitioner's appeal. Shapiro then forwarded a copy of the letter he had written to Beeler saying that he was awaiting the transcripts from the first trial.

In June 1986, according to respondents' papers, the Clerk's Office of the Appellate Division "first became aware" that Shapiro had not yet perfected the appeal in petitioner's case. Respondents' papers do not explain how that office suddenly came to awareness of this fact or why the 1985 exchange of correspondence with Shapiro was insufficient to apprise it of the delay.

On October 30, 1986 the Chairwoman of the Grievance Committee for the Second and Eleventh Judicial Districts sent Shapiro a letter of caution because of his neglect in the handling of his various assigned appeals.

The warning seems to have had little effect. Shapiro continued to reassure petitioner's family that he was working on the appeal, but did nothing. In May 1987 petitioner, who knew nothing of the letter of caution, wrote again to Shapiro to find out why the appeal was taking so long. He says in that letter: "I assumed from your last letter of 6/31/83 [the letter was actually dated May 31, 1983—some four years earlier] that my appeal had merit and that it would be expedited quickly. Since this hasn't happened, I have begun to worry." Petitioner had then served nearly five years of his sentence.

In June 1987 the Chief Clerk of the Appellate Division, Second Department, directed Shapiro to furnish a list of all criminal appeals assigned to him and to describe their status. Of sixteen such appeals, Shapiro had failed to perfect fifteen.

On August 21, 1987 the Chief Clerk wrote to Shapiro and warned him that if he had not filed all his overdue briefs by Labor Day, the matter would be referred to the Grievance Committee. He did not file

the briefs, and the next month the matter was referred to the Grievance Committee.

In October 1987 petitioner's brother, Errol Baker, telephoned the Clerk of the Court at the Second Department to determine whether petitioner's appeal brief had been filed as represented by Shapiro. It had not been. When Baker explained the situation, the Clerk told him that the court had received many complaints about Shapiro and that new counsel would be assigned. Later that month, Shapiro was relieved.

In January 1988 the court assigned a new attorney, Bernard Kleinman, who perfected the appeal at the end of March 1988.

In September 1988 petitioner filed in this court for a writ of habeas corpus.

The Appellate Division finally heard petitioner's appeal in November 1988, and on December 12, 1988 issued a written opinion affirming the conviction. *People v. Simmons*, 535 N.Y.S.2d 451 (App.Div.2d Dep't 1988).

## II.

Sadly, petitioner's six-year quest to have his appeal heard is by no means an isolated incident. Indeed, the Second Circuit recently considered a habeas corpus petition involving a comparable case in the First Department. *Mathis v. Hood*, 851 F.2d 612 (2d Cir.1988).

In the *Mathis* case, as in this one, the petitioner repeatedly contacted his court-appointed lawyer in a vain effort to persuade counsel to expedite the filing of his appeal brief. After nearly three years of delay, the petitioner brought the problem to the attention of the Appellate Division. It relieved counsel and appointed new counsel, who finally filed a brief over two years after his appointment. Mathis's appeal was decided after he filed his habeas corpus petition but before the petition came before the Second Circuit. *Id.* at 613.

Reversing the district court, the Second Circuit determined that Mathis had exhausted his state remedies by bringing the delay to the attention of the Appellate Division. The court held that a writ of error *coram nobis* probably would not have been

an available remedy under New York law, and that in any event it would be "speculative at best to assume that merely adding the words '*coram nobis*' to his letters would have induced the Appellate Division to respond differently." *Id.* at 615.

Determining that the claim was not moot even though the appeal had been heard, *id.* at 614, the court directed the district court to consider the merits of the due process claim and determine "what relief, if any, may be available." *Id.* at 615.

Respondents urge that this case is unlike the *Mathis* case because petitioner, unlike Mathis, did not contact the Appellate Division directly about Shapiro.

■ This court disagrees. Petitioner's claim rests on his inability to obtain assistance from his lawyer, whom the state was constitutionally required to appoint. *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). He had in effect no counsel to advise him as to the proper forum in which to seek relief. In such a case, "it would be meaningless to insist that petitioner exhaust his state remedies when the essence of his due process claim arises directly out of his inability to do so." *Wheeler v. Kelly*, 639 F.Supp. 1374, 1378 (E.D.N.Y.1986), *aff'd*, 811 F.2d 133 (2d Cir. 1987).

Petitioner made diligent, although perhaps somewhat misdirected, efforts to get relief. Through repeated communications with his counsel, supplemented by those of his family and his inmate caseworker, and entreaties to the Division of Youth, the Legal Aid Society, and the District Attorney, he attempted to pursue his state remedies, if indeed he had any, as best he could.

Moreover, he notified the Appellate Division several times of his difficulties with Shapiro—in 1984 by sending the Clerk a copy of his letter to the District Attorney, in 1985 through Beeler, and in 1987 through his brother. Yet the state, which admits to having known of Shapiro's unprofessional conduct at least since 1985, afforded petitioner no remedy for over three-and-a-half years.

■ As in the *Mathis* case, therefore, petitioner's state remedies, if available, were ineffectual. *Mathis, supra,* 851 F.2d at 615; *see* 28 U.S.C. § 2254(b); *see also Harris v. Kuhlman,* 601 F.Supp. 987, 991 (E.D.N.Y.1985) (inadequate appeals process in Second Department effectively blocked petitioner's ability to exhaust state remedies). The court is bound by the Second Circuit's holding that the state's eventual disposition of his appeal did not moot his petition. *Mathis, supra,* 851 F.2d at 614. The court will thus address the merits.

### III.

■ Courts in this circuit have used the criteria articulated in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), regarding the right to a speedy trial to determine whether delay in hearing a prisoner's appeal constitutes a denial of due process. *See, e.g., Wheeler, supra,* 639 F.Supp. at 1378; *Harris, supra,* 601 F.Supp. at 993. Those criteria are: (1) Is the length of the delay excessive? (2) Are there acceptable reasons for the delay? (3) Has petitioner effectively waived his right by failing properly to assert it? (4) Was there prejudice to petitioner? *See Wheeler, supra,* 639 F.Supp. at 1378; *Harris, supra,* 601 F.Supp. at 993–94.

The delay was patently excessive. The appeal was routine. Mr. Kleinman was able to perfect it within two months of his assignment. The more than six years between petitioner's filing of his notice of appeal and the hearing constituted over two-thirds of his nine-year-minimum sentence. *See Harris, supra,* 601 F.Supp. at 993.

There were no acceptable reasons for the delay. The inaction of Shapiro and the Appellate Division caused the delay, not the complexity of the legal and factual issues on appeal. The Appellate Division was advised of Shapiro's delinquency in May 1984 and again in May 1985 (whether or not it "discovered" it then), yet sent him no warning until October 1986 and did not relieve him for another year thereafter.

Respondents offer no explanation for their failure to discover Shapiro's default earlier or to take action more quickly upon discovering it. The state surely had at its disposal the means to supervise more actively the performance of court-appointed attorneys. For example, it could have used a dismissal calendar to keep track of pending appeals and put pressure on dilatory attorneys. *See Harris, supra,* 601 F.Supp. at 993. Indeed, the Second Department began to use a dismissal calendar a mere two months after Mr. Shapiro was assigned to petitioner's case, *see* App.Div.R. § 670.24 (effective Mar. 23, 1983), but inexplicably failed to apply the calendar to pending cases. If such a system had been applied retroactively, the Appellate Division would have learned much sooner that Shapiro had failed to perfect appeals for petitioner and other indigent clients.

In addition, the District Attorney could have sought a dismissal for failure to prosecute, which would also have brought the delay to the court's attention. *See Wheeler, supra,* 639 F.Supp. at 1380.

The state's failure to institute some administrative vehicle for monitoring the 18–B panel makes the delay unacceptable. *See Harris, supra,* 601 F.Supp. at 993.

Petitioner made reasonable and proper efforts under the circumstances to assert his right to appeal. He and his family regularly called or wrote to Shapiro and, as their patience wore thin, to a variety of state officers and agencies, including the Appellate Division. Petitioner was undoubtedly instructed to direct all inquiries to his counsel and may not have been aware that he could petition the court for relief directly. *See id.* at 990 (petitioner directed by Second Department to make all inquiries regarding his appeal to counsel). He was advised in prison that a request for new counsel would only delay his appeal.

As with the exhaustion requirement under 28 U.S.C. § 2254(b), the court will not charge petitioner with failure to assert his right to appeal simply because he did not assert it in the most expeditious fashion. A teenage prisoner whose counsel ignores him cannot be expected to divine the intricacies of the court system.

Petitioner suffered some prejudice. As with the right to a speedy trial, prejudice in this context should be assessed in light of the interests that petitioner's due process right to a reasonably speedy appeal is designed to protect. By analogy to the *Barker* case, these are: (1) to prevent oppressive post-trial incarceration, should the appeal ultimately prove successful; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the appeal and any resulting retrial will be compromised by the passage of time. *Cf. Barker, supra,* 407 U.S. at 532, 92 S.Ct. at 2193. Of these, the last is clearly the most important, since it implicates the integrity of the entire appeals process. *See id.*

Petitioner clearly suffered unnecessary anxiety and concern. His conviction was affirmed, however, and he has not claimed that the delay prejudiced his appeal. The court cannot say that the prejudice to him, although appreciable, was great.

However, the court must weigh the four *Barker* factors together. No one is determinative. *Id.* at 533, 92 S.Ct. at 2193. In light of petitioner's sustained efforts to procure a hearing, the length of the delay, and the lack of any justification for it, the state's six-year delay constituted a deprivation of due process.

Moreover, an appeal as of right does not accord with due process unless the appellant has the effective assistance of an attorney. *Evitts v. Lucey,* 469 U.S. 387, 396, 105 S.Ct. 830, 836, 83 L.Ed.2d 821 (1985). The Supreme Court has not yet enunciated standards for determining what constitutes ineffective assistance of appellate counsel. *See id.* at 392, 105 S.Ct. at 833. But nothing could be more ineffective than a failure to perfect an appeal.

Perhaps petitioner suffered no "prejudice" as defined by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984). The outcome of his appeal probably would not have been different if he had been assigned competent counsel from the start. *See id.* at 694, 104 S.Ct. at 2068. But the *Strickland* test is inapplicable where he had in effect "no counsel or, at best, nominal counsel" on appeal. *Jen-*

*kins v. Coombe,* 821 F.2d 158, 161 (2d Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 704, 98 L.Ed.2d 655 (1988); *see Strickland, supra,* 466 U.S. at 692, 104 S.Ct. at 2067 ("Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice.").

Although petitioner ultimately received effective assistance of counsel from Kleinman, the state failed for nearly six years to protect petitioner's right to such assistance. Just as a six-year delay in hearing petitioner's appeal constitutes a deprivation of due process, so a six-year delay in providing effective counsel on appeal constitutes such a deprivation.

## IV.

Although the court holds that the state violated petitioner's constitutional rights, it cannot grant him relief on his petition for habeas corpus. The state has already afforded him, albeit belatedly, the specific relief logically demanded by his petition—decision on his appeal. *See Wheeler v. Kelly,* 811 F.2d 133, 135 (2d Cir.1987).

Under 28 U.S.C. § 2254(a), the court may only grant the writ and order his release if he is "in custody in violation of the Constitution or laws or treaties of the United States." *See, e.g., Preiser v. Rodriguez,* 411 U.S. 475, 484, 93 S.Ct. 1827, 1833, 36 L.Ed.2d 439 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody."); *Townsend v. Sain,* 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1963) ("State prisoners are entitled to relief on federal habeas corpus only upon proving that their detention violates the fundamental liberties of the person, safeguarded against state action by the Federal Constitution.").

■ Since petitioner's conviction was affirmed, his incarceration is lawful. There is thus no basis for ordering his release. His petition for a writ of habeas corpus is therefore denied.

Petitioner's appropriate remedy is to bring an action for damages under 42 U.S. C. § 1983 (1982). Indeed, the facts alleged in his petition for habeas corpus appear to

state a claim under § 1983. The court therefore directs the Clerk of the Court to appoint counsel for petitioner from the *pro bono* panel to assist him in pursuing an appropriate civil rights action.

If petitioner desires to recast this action as a § 1983 claim, he may amend his petition within sixty days of the date of this Order. The court will treat the amended petition as a complaint brought under § 1983.

So ordered.