**Dennis SIMPSON, Petitioner,**

v.

**Patrick KEOHANE, Warden, Lewisburg Federal Penitentiary, and Robert Abrams, Attorney General of the State of New York, Respondents.**

**No. 89 Civ. 8230 (GLG).**

United States District Court,
S.D. New York.

April 10, 1990.

Dennis Simpson, Lewisburg, Pa., pro se.

Carl A. Vergari, Dist. Atty. of Westchester County, White Plains, N.Y. (Joseph W. Sands and Joseph M. Latino, of counsel), for respondents.

## OPINION

GOETTEL, District Judge:

This petition for habeas corpus presents the recently recurring issue of appellate delay. The facts presented to the court in the petition and in the opposition papers are less than crystal clear. The facts pertinent to resolution of the petition, however, do not appear to require an evidentiary hearing.

## FACTS

The petitioner was involved with two co-defendants in a sordid crime which commenced in the state of Connecticut. Three persons approached a man and a woman in a parking lot of a hotel in Stamford, Connecticut as they were about to enter an automobile. The three culprits, one of whom displayed a handgun, forced the victims into their car, kidnapped them, and drove them to Mount Vernon, New York. The female victim was raped by two of the perpetrators. The car was stolen, as well as certain personal property of the victims. The victims were released alive.

The petitioner was charged with both federal and state criminal offenses arising from these events. In federal court, the petitioner was convicted of kidnapping and sentenced to 30 years imprisonment. In Westchester County Court, the petitioner was found guilty solely of criminal facilitation in the 4th degree, a Class A misdemeanor, and sentenced to incarceration for one year.[1] This sentence was to follow the federal sentence but to run concurrently with a 3½ to 7 year sentence imposed by the Westchester County Court in a separate grand larceny prosecution.[2]

The petitioner filed a timely notice of appeal on August 5, 1981 challenging the one year misdemeanor sentence. In May of 1983, petitioner moved to appeal *in forma pauperis* and for the assignment of counsel. The motion was granted and an attorney was appointed. No progress was made on the appeal for three years and the petitioner moved for the assignment of new counsel. That motion was granted on May 29, 1986 and a new attorney was appointed. As evidenced by a series of letters and orders, it appears that the Appellate Division attempted to move the appeal along. Appointed counsel had great difficulty in obtaining the trial transcripts.[3] Several applications for an enlargement of time to perfect the appeal were made. With respect to one such application filed in October of 1987, the People cross-moved to dismiss, claiming they had been prejudiced by

---

1. It appears, although it is not totally clear, that petitioner's co-defendants were convicted of the more serious crime of rape and other related crimes and given more substantial sentences in a separate prosecution.

2. This sentence also was to commence after the 30 year federal sentence was served.

3. Counsel did obtain transcripts of some lengthy pretrial hearings. It is unclear whether the problem of obtaining trial transcripts pertained only to the transcript of the trial in which petitioner had a misdemeanor conviction or whether it also related to his other prosecutions and prosecutions of co-defendants.

the dilatory prosecution of the appeal. Indeed, six years had passed since a notice of appeal had been filed and stenographic notes had been lost in the interim. The People also argued that the appeal was immaterial since the term of incarceration was to be concurrent with the longer 3½ to 7 year sentence.[4] The People's cross-motion to dismiss was denied and the petitioner was granted until February 23, 1988 to serve his appellate brief. The People were directed to provide petitioner with a copy of the trial minutes. In February 1988 assigned counsel again moved to extend the time for filing the appeal. The People did not cross-move to dismiss the appeal. Assigned counsel explained that he had at last received the necessary trial minutes but that the record was much larger than anticipated, the issues more substantive and numerous, and that he needed additional time to perfect the appeal. On March 17, 1988, his application for an extension of time was denied. The court *sua sponte* dismissed the appeal for failure to prosecute. This habeas corpus petition attacks that action by the Appellate Division.

The respondents' opposition to the petition raises multiple issues. Initially, the respondents argue that the petitioner's failure to seek permission from the Court of Appeals to appeal the dismissal of his appeal by the Appellate Division renders habeas corpus review inappropriate. The respondents acknowledge that any attempt to do so at this time would be untimely but contend that the state might ignore its own procedural rules and entertain the request. The respondents also argue, with somewhat more force, that an alleged violation of appellate rights cannot form the basis of a habeas corpus petition. This theory

arises from the fact that convicted persons are not in custody because of the delayed appeal but because of the underlying conviction. Consequently, the requested relief under these circumstances, a new appeal, would not result in habeas corpus release because the petitioner would still be in custody. Finally, they point out that the habeas corpus petition is academic, in any event, since the sentence on this misdemeanor merges by law with the 3½ to 7 year sentence and that the petitioner will commence neither sentence for many years because he is still in federal custody serving his kidnapping sentence.[5]

## THE LAW

Although the basic position concerning the rights of a state habeas petitioner with respect to appellate delays have never been directly decided in this circuit, the arguments made by the state were implicitly rejected in *Mathis v. Hood*, 851 F.2d 612 (2d Cir.1988). In *Mathis*, the petitioner endured a 5½ year delay in appellate review of a robbery conviction. During that period, a petition for habeas relief was denied in the district court because of failure to exhaust state remedies. While the matter was pending on appeal in the federal court, the state appellate court decided the appeal adversely to the petitioner. The Second Circuit nevertheless found that the petition was not rendered moot by the state court's appellate disposition, that the petitioner was not required to file a state writ of error *coram nobis* before petitioning for federal habeas corpus relief, and that there had been a denial of due process. *Id.* at 614–15. The pertinent portions of that decision are as follows:

---

**4.** We have not been told what became of the appeal of that sentence but gather, by the absence of any reference, that the appeal was heard and the conviction affirmed.

**5.** Respondents acknowledge that a petitioner can properly challenge the constitutionality of a consecutive sentence to be served at a later time. *Peyton v. Rowe*, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968). They argue, however, that because the petitioner must serve the 3½ to 7 year sentence, the additional one year

sentence imposed by the misdemeanor will merge with the concurrent sentence. In response, the petitioner argues that the effect of the misdemeanor conviction is to extend the minimum sentence he must ultimately serve with the state by a year. Thus, the misdemeanor sentence could some day have an impact on his parole eligibility. We note that his assigned appellate counsel did not agree with this position and believes that the misdemeanor conviction would have no impact on his period of state custody.

Although the six-year delay experienced by Mathis is shocking, unfortunately it is not unusual in the First and Second Departments of the Appellate Division. "There is a crisis in the First and Second Departments. Because of the extraordinary delays which infect the system, many indigents have effectively been denied their right to appeal. As a matter of routine, prisoners frequently serve their sentences before their appeals are even heard." *The Crisis in Indigent Appeals in the First and Second Departments,* by the Comm. on Criminal Advocacy of the Association of the Bar of the City of New York (April 16, 1985).

\*     \*     \*     \*     \*     \*

It is unclear whether under New York law a writ of error *coram nobis* could have been used to bring the delay to the attention of the First Department. However, even assuming that the writ was available, circumstances were such that the use of the writ would have been ineffective to protect Mathis' rights in this case.

\*     \*     \*     \*     \*     \*

In any event, given the situation in the First Department faced by many prisoners who are represented by appointed counsel, further attempts to seek relief from the delay in the Appellate Division would likely have been futile. Mathis brought the delay to the attention of the First Department on numerous occasions. In addition, his appeal appeared on the dismissal calendar, not once, but twice. It is speculative at best to assume that merely adding the words *"coram nobis"* to his letters would have induced the Appellate Division to respond differently.

We are sympathetic to the problems associated with processing the staggering number of indigent appeals in the state system. We are confident that the state courts are fully aware of the situation and of the measures required to alleviate the situation. Meanwhile, federal habeas review is available to protect indigent prisoners' rights to appeal.

*Id.* Having so held, the Court of Appeals then took the strange tack of remanding the case to the district court "to address the merits of petitioner's due process claim and determine what relief, if any, may be available." *Id.* at 615.

We agree with Judge Elfin's opinion, stated in *Miles v. Kelly,* 692 F.Supp. 162, 163 (W.D.N.Y.1988), that the result in *Mathis* was a bit surprising and contrary to earlier law in this Circuit. Judge Elfin concluded, and we agree, that *Wheeler v. Kelly,* 639 F.Supp. 1374, 1381–82 (E.D.N.Y. 1986), *aff'd,* 811 F.2d 133 (2d Cir.1987), although not cited in *Mathis,* has been *sub silentio* overruled. Any thought that *Mathis* was an aberration, however, is eliminated by the Second Circuit's more recent decision in *Brooks v. Jones,* 875 F.2d 30 (2d Cir.1989).

In *Brooks,* the court characterized the petitioner's appellate treatment as the "inexcusable neglect by a succession of assigned counsel, who relieved one another but did little else, and ... a pervasive want of effective supervision of the process by which the post-conviction review of indigent's rights are vindicated." *Id.* at 31. That decision, which, like *Mathis,* was written by Senior Circuit Judge Lumbard, relied heavily on the *Mathis* decision, and held that:

> [W]hen it is perfectly apparent, as it is here, that a prisoner's requests to the state court and requests to state-appointed counsel have been to no avail, we have held that the prisoner need not take additional steps in state court before he may be heard in the federal courts.

*Id.* Thus, the court rejected the respondent's contention that the petitioner had failed to exhaust his state remedies. "When the petitioner can substantiate his complaint that his right to appeal is being violated by inattention and time-consuming procedures, to require one more technical step would be to tolerate the frustration of the petitioner's due process rights." *Id.* (citing *Roberson v. The State of Connecticut,* 501 F.2d 305, 309–10 (2d Cir.1974)). Although Brooks' appeal was due to be heard shortly in the Appellate Division, the

court nevertheless felt it necessary to take some action to reduce the lengthy delays in the state court. The Court concluded by holding that:

The federal courts should not be the place where incarcerated defendants must go in order to call attention to the neglect they face and the denial of their right to have their appeals heard before they have spent a substantial amount of time in jail. We hope that the time will not come when the situation must be dealt with by prompt action in federal district court whenever it is clear that state prisoners' requests are being ignored. However, the delay such as that suffered by Brooks makes a mockery of the right to appeal and cannot be overlooked.

Our decision today—that Brooks need be released only if his appeal is not heard within sixty days—should not encourage the belief that the district court must always stand aside when the state courts finally stir up counsel and schedule the appeal after the prisoner has filed a habeas petition in the district court. While "[w]e are sympathetic to the problems associated with processing the staggering number of indigent appeals in the state system[,] . . . federal habeas review [remains] available to protect indigent prisoners' rights to appeal." *Mathis, supra*, at 615. Surely, indigent defendants need not wait eight years, as Brooks did, before coming to the district court for relief.

*Id.* at 32.

Finally, in *Simmons v. Reynolds*, 898 F.2d 865 (2d Cir.1990), the Second Circuit reiterated its approval of the *Mathis* and *Brooks* approach to appellate delay.[6] As stated by the court:

Just as we are placed between sympathy for over-worked, underfunded state courts and prisoners seeking habeas relief from unconstitutional delays of their appeals, so we are forced to choose between unpalatable alternatives in deciding the prisoners' habeas petitions. Unconditional release is too much—it grants a prisoner dismissal of a criminal charge on which he was properly convicted, a right he does not have. Denial of all relief is too little—it ignores the denial of effective counsel and a reasonably speedy appeal, rights a prisoner does have. The traditional choice, a conditional order requiring a state court to hear the appeal within a specific period of time or release the prisoner, is still the most appropriate remedy: it limits the time state courts may delay; it grants a prisoner the required relief, his appeal; and it provides federal courts with an effective means to protect prisoners' rights to appeal.

*Id.* at 869.

The facts in this case are more egregious than in either *Mathis, Brooks* or *Simmons*. Simpson's appeal was dismissed outright by the court on its own motion. No reasons were given for dismissing the appeal except for the lack of prosecution. Apparently, the Court concluded that assigned counsel had had adequate time to perfect his appeal and had failed to do so without reasonable excuse. We cannot conceive, however, why the presumably inexcusable failure of an attorney appointed, supervised and paid by the state, should be visited upon the indigent appellant.[7] We would

---

6. In *Simmons,* the petitioner filed a timely notice of appeal with the Appellate Division, Second Department, in May 1982 and was assigned counsel. Counsel withdrew due to a conflict of interest and the petitioner was assigned new counsel in January 1983. Over the next five years, counsel failed to perfect the petitioner's appeal, despite prodding by the Appellate Division. Finally, in January 1988 the Appellate Division removed counsel and assigned a new attorney who perfected the appeal in March 1988. In September 1988 the petitioner filed for a writ of habeas corpus in federal court. While

the petition was pending, the Appellate Division affirmed the petitioner's conviction. *Id.* at 866.

7. We hasten to note that we are not concurring in the implicit state court finding that the assigned counsel was negligent and incompetent. As best we can gather from the limited papers before us, he was not wholly responsible for the extensive delays in obtaining the state trial transcript and was given only one brief adjournment once he possessed them. We note this simply because we gather, in the absence of any other explanation, that the Appellate Division took a different view of his performance.

think, and indeed it has been the practice in similar cases, that the appropriate remedy, assuming that the Appellate Division felt that the blame rested with the assigned counsel, would have been the replacement of the attorney, his removal from the lists of attorneys serving on the panel, and perhaps other grievance procedures against him.

Respondents argue that the Appellate Division was merely attempting to maintain control over its calendar and discipline a negligent 18(b) attorney without denying petitioner any fundamental rights since the appeal was essentially academic in any event. They argue that this is probably the same action that the Court of Appeals for the Second Circuit would have taken in a similar situation. In light of the recent Second Circuit decisions cited above, we cannot agree with that conclusion. While such action might have been appropriate with retained counsel, the result with assigned counsel clearly would have been much different. Nor do we see how the dismissal of the appeal disciplined the errant assigned counsel. We conclude, therefore, that neither the failure to appeal to the Court of Appeals, assuming such an appeal is provided under New York law, nor the fact that the claimed due process violations occurred in an appeal, prevent the court from granting habeas corpus relief.

■ We are left, however, with the very difficult question of what relief can be afforded to the petitioner. The strange remand in *Mathis* occurred in a situation where the appeal had been decided and the conviction affirmed and there was no possible relief to be afforded to the petitioner except to set aside the underlying conviction. We have, therefore, attempted to track the subsequent history of that case for whatever guidance it might provide. On April 28, 1989 Judge Robert P. Patterson of the Southern District of New York, to whom the case had been reassigned, issued an unreported decision indicating

that he was not granting petitioner any relief at that time but was, rather, pursuing the question of whether the delay in the appellate process, under the circumstances, prejudiced the appeal or caused it to become a mere ritual. He opined that there is no precedent for a court releasing a prisoner because of unconstitutional delay in the appellate process and that the remedy of discharge is more appropriate where constitutional infirmities affect the conviction itself. He then considered the question of whether deterrence of the extraordinary delays in the New York State appellate system might be a sufficient reason to grant the requested relief. He concluded that the significance of the issue of prejudice was such that an evidentiary hearing had to be conducted. Preliminarily, however, he believed that the counsel on the habeas petition were entitled to discovery. *Mathis v. Hood,* No. 87–6234, 1989 WL 46662 (S.D.N.Y. April 28, 1989) (available on WESTLAW). We are advised that this discovery is still continuing.

We are, therefore, confronted with a conundrum. Even when the appeal has ultimately been decided unfavorably to the petitioner, the Second Circuit has indicated that he may be entitled to some relief. *Simmons v. Reynolds,* 898 F.2d at 869–70 (2d Cir.1990);[8] *Mathis v. Hood,* 851 F.2d 612, 615 (2d Cir.1988). In the present, more extreme case, where the appeal has been dismissed, it would follow that the petitioner is similarly entitled to some form of relief. In light of the fact that the petitioner is not presently serving the challenged sentence and, indeed, may never serve an extra day because of this sentence, it is difficult to envision appropriate relief. For want of a better answer, we direct the Appellate Division to reinstate the petitioner's appeal and assign new counsel within 30 days of this decision. Counsel will then have 60 days to file an appellate brief and the appeal shall be heard by the Appellate Division within 30 days thereafter. If these conditions are

**8.** In *Simmons,* the Second Circuit affirmed the district court's judgment which, in the exercise of discretion, denied Simmons habeas relief and granted him the option to assert a civil rights claim for damages. *Simmons, supra* at 870.

**642**

not met, the underlying conviction must be set aside.

The court's conclusions on this issue probe an uncertain area of law and are, therefore, questionable. Consequently, to the extent that the petitioner may wish to appeal this decision, we certify that an appeal would not be frivolous. The state, of course, is entitled to appeal this decision as of right. The court's order will be stayed pending the appeal.

SO ORDERED.