**Leroy GEAMES, Petitioner,**

v.

**R.J. HENDERSON, Superintendent, Auburn Correctional Facility, Respondent.**

**No. CV 89–2332.**

United States District Court, E.D. New York.

Nov. 22, 1989.

---

Leroy Geames, pro se.

Patrick Henry, Suffolk County Dist. Atty. by Glenn D. Green, Riverhead, N.Y., for respondent.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Petitioner Leroy Geames seeks a writ of habeas corpus under 28 U.S.C. Section 2254. In his *pro se* petition, petitioner claims that the state court's three-and-one-half years delay in deciding his appeal has resulted in a denial of his constitutional right to due process. The respondent opposes the petition on the grounds that the petitioner has neither exhausted his state remedies nor been denied his due process rights. For the reasons stated below, the writ is granted.

### I.

On February 14, 1986, petitioner was convicted in Supreme Court, Suffolk County, of robbery in the first degree. He was thereafter sentenced to an indeterminate term of imprisonment of twelve and one-half to twenty-five years.

On February 19, 1986, the Legal Aid Society ("Legal Aid") filed a notice of appeal on petitioner's behalf. Thereafter, on April 17, 1986, the Appellate Division of the Second Judicial Department ("Appellate Di-

vision") assigned Legal Aid to represent the petitioner on his appeal.

However, on July 11, 1986, Legal Aid moved to be relieved as appellate counsel. In a letter to petitioner dated July 11, 1986, Legal Aid noted that the file in petitioner's case and correspondence from petitioner indicated his displeasure with representation by Legal Aid trial counsel. Because a conflict would arise if the appeal were based on ineffective assistance of counsel, Legal Aid informed petitioner that it was precluded from representing him on appeal and, therefore, was seeking to be relieved as appellate counsel.

By order dated September 10, 1986, the Appellate Division granted Legal Aid's request and assigned Andrew Schatkin ("Schatkin") as new appellate counsel. The court further ordered that all papers in the action be turned over to Schatkin, that the time to perfect the appeal be enlarged, and that Schatkin prosecute the appeal expeditiously.

Nevertheless, in September of 1987, Schatkin informed petitioner that he was seeking to be relieved as assigned counsel because he had accepted a position with the Legal Aid Society of New York City. During his one year as appellate counsel, Schatkin was unable to perfect petitioner's appeal.

In support of his motion to the Appellate Division, dated September 12, 1987, to be relieved as counsel, Schatkin affirmed that he had partially written the appeal, which he offered to make available to new counsel. In addition, Schatkin maintained that one reason the appeal remained unperfected was that during the winter he had been severely ill with pneumonia.

By order dated November 19, 1987, Schatkin's motion was granted and Michael J. O'Connor ("O'Connor") was appointed new counsel to prosecute the appeal. Schatkin was directed to turn over all papers to O'Connor, but no schedule was established for perfecting the appeal. The court, once again, merely enlarged the petitioner's time to perfect the appeal.

Sometime in December 1987, by an undated letter, O'Connor notified petitioner of his assignment as appellate counsel, and of his intention to file the appellate brief as soon as possible. In May of 1988, O'Connor wrote petitioner to tell him that he was actively working on the appeal and was seeking additional information.

Concerned as to O'Connor's progress with the brief, petitioner wrote O'Connor on September 18, 1988, asking O'Connor what progress had been made on the appeal. Petitioner also sent copies of cases which he wanted incorporated into the brief, and asked that O'Connor inform him of the issues that would be raised in the brief. O'Connor wrote petitioner the following week to acknowledge receipt of the September 18 letter. Then on November 3, 1988, petitioner claims that O'Connor told petitioner's wife that he was going to file the brief later that month. By letter dated November 4, 1988, petitioner informed O'Connor that he opposed O'Connor's filing the brief without giving him the opportunity to review it. Petitioner also complained at that time that O'Connor had not responded to earlier requests that certain points be raised in the brief. Petitioner forwarded a copy of the November 4 letter to the Appellate Division, though the record does not indicate whether the Appellate Division received or acted on the letter at that time.

The record indicates that from November of 1988 to May of 1989, the petitioner had unsuccessfully attempted to stay in close communication with O'Connor regarding the progress of the appeal. In May 1989, petitioner wrote the New York State Bar Association ("Bar Association") to complain about O'Connor's handling of the appeal. In its reply, the Bar Association informed petitioner that it had forwarded his correspondence to the Grievance Committee for the Tenth District, the body with jurisdiction over petitioner's allegations of misconduct by his attorney. Finally, on June 5, 1989, O'Connor sent petitioner a copy of the brief, purportedly containing only the substance of the appellate issues, for him to review. Respondent's Memorandum at 7. In the cover letter O'Connor apologized

for the "inordinate delay," which he attributed to illness.

Apparently under the impression that the portion sent was the complete brief, petitioner wrote O'Connor to complain about perceived inadequacies in the brief. When O'Connor failed to respond, petitioner, on June 25, 1989, wrote the Appellate Division to complain that he was having a hard time contacting O'Connor, and to inquire whether O'Connor had yet filed the brief. Petitioner wrote a follow-up letter on July 25, 1989, and the Appellate Division responded on August 1, 1989. Through its Chief Clerk, Martin Browstein, the Appellate Division informed the petitioner that it had written O'Connor and had directed him to contact the petitioner and advise him of the status of the appeal. When petitioner did not hear from O'Connor over the next two weeks, he again wrote the Appellate Division. Petitioner stated that O'Connor had not contacted him as directed, and complained about the adequacy of the brief which O'Connor had sent to him in June. Shortly thereafter, O'Connor contacted petitioner to inform him that the Suffolk County District Attorney ("District Attorney") had motioned for a preference in the hearing of petitioner's appeal.

In July of 1989, this Court issued an order directing the respondent to show cause why the present petition should not be granted. In addition to responding to the order on the respondent's behalf, the District Attorney moved for a preference in the Appellate Division to have the state court appeal determined expeditiously. Respondent's Memorandum at 8.

The District Attorney, through Assistant District Attorney Glenn Green, has informed this Court that O'Connor has recently filed the appellate brief and that the petitioner has filed a pro se supplemental brief. Mr. Green has also informed this Court that the state will file its brief in opposition by November 24, 1989, and that oral argument will be set for December 9, 1989.

## II.

As noted above, petitioner claims that the state court's delay in deciding his ap-

peal has deprived him of his constitutional right to due process of law. Respondent opposes the petition on the ground that the petitioner has failed to exhaust state remedies and on the merits.

### A. *Exhaustion*

Respondent points out correctly that a federal court may not consider a petition for habeas corpus unless the petitioner exhausts all available state court remedies. However, where there is either an absence of available state corrective processes or the existence of circumstances rendering such corrective processes ineffective, exhaustion will not be required. 28 U.S.C. Section 2254(b). Where, as here, a habeas claim is based upon allegedly unconstitutional delay in the state appellate process, and a prisoner's requests to the state court and state-appointed counsel have been to no avail, the Court of Appeals for the Second Circuit has held that the state provides no effective remedy and, consequently, exhaustion is not required. *Brooks v. Jones*, 875 F.2d 30, 31 (2d Cir. 1989); *Mathis v. Hood*, 851 F.2d 612, 615 (2d Cir.1988). Accordingly, this Court holds that petitioner's failure to exhaust his state remedies does not bar this Court from considering his claim of unconstitutional delay in the state appellate process. *See Brooks*, 875 F.2d at 31; *Mathis*, 851 F.2d at 615; *Wheeler v. Kelly*, 639 F.Supp. 1374, 1378–81 (E.D.N.Y.1986), *aff'd*, 811 F.2d 133 (2d Cir.1987).

### B. *The Merits*

To determine whether delay in state appellate procedure has deprived a petitioner of due process of law, a federal court must look to the totality of the circumstances, though several factors have provided the core of the analysis for post-conviction delay. *See Brooks*, 875 F.2d at 31 (citing *Barker v. Wingo*, 407 U.S. 514, 530–33, 92 S.Ct. 2182, 2192–93, 33 L.Ed.2d 101 (1972)); *Wheeler*, 639 F.Supp. at 1378–81. These factors include (1) the time period of the delay; (2) the reason for the delay; (3) the petitioner's attempt to perfect the ap-

peal; and (4) the prejudice to the petitioner caused by the delay. *Id.; see Simmons v. Reynolds,* 708 F.Supp. 505, 509 (E.D.N.Y. 1989). A fifth factor is federal-state judicial comity. *Wheeler,* 639 F.Supp. at 1378. In this context, a federal court considers how soon the state appellate court will decide the appeal. *Id.* at 1381. No single factor is dispositive, rather a court must engage in a balancing test considering all other relevant circumstances.

As for the time period of the delay, "there is no formula for determining if a delay is excessive." *Id.* at 1378; *see also Gimenez v. Leonardo,* 702 F.Supp. 43, 46 (E.D.N.Y.1988). This Court has previously rejected any notion that when the delay in deciding the direct appeal exceeds some fixed percentage of the sentence, it is per se excessive. *See Wheeler,* 639 F.Supp. at 1379. Rather, whether delay is excessive depends on the "complexity of the litigation, the advocacy of the parties, and the institutional vigilance of the Court." *Id.* at 1378.

■ In this case, it has been over three and one-half years since the petitioner was convicted and filed his notice of appeal. Because the Court views the issues on appeal as no more complex than in most criminal appeals, the delay appears excessive.

As to the advocacy of the parties, the record weighs in favor of a finding of excessive delay. Regarding petitioner's attorneys, first, Legal Aid was relieved shortly after its appointment, and therefore took few, if any, steps toward perfecting the appeal. Second, Schatkin likewise accomplished little toward perfecting the appeal during his one year as appellate counsel. Lastly, O'Connor, appointed twenty-one months after the appeal was taken, took some two years to file the appellate brief. This Court believes that O'Connor should have prosecuted the appeal more vigorously. In addition, the Court notes that the District Attorney never moved for a dismissal for lack of prosecution, and its motion for a preference came only after the instant petition was filed.

As for the institutional vigilance of the Appellate Division, this Court still questions (as it did in *Wheeler*) the Appellate Division's ability to exercise the necessary vigilance to monitor its calendar to protect the rights of indigent prisoners with unperfected appeals. *See id.* at 1379. In this case, the Appellate Division's actions came only in response to Legal Aid's and Schatkin's motions to be relieved and petitioner's own efforts to have the Appellate Division prod O'Connor to complete the brief. Consequently, this Court concludes that the delay in this case is excessive enough to trigger a violation of the petitioner's due process rights.

As for the reasons for the delay, this Court finds that appointed counsel and the Appellate Division each contributed to and caused the delay, and that their conduct is chargeable to the state. *Id.* at 1377; *Harris v. Kuhlman,* 601 F.Supp. 987, 992 (E.D. N.Y.1985). It was the inaction of appointed counsel and the Appellate Division which caused the delay, not the complexity of the issues on appeal. *See Simmons,* 708 F.Supp. at 509. Additionally, the District Attorney never sought to have the unperfected appeal dismissed for want of prosecution, which although not a cause of the delay, contributed to the appeal remaining unperfected. *Knapp v. Kelly,* 661 F.Supp. 541, 542 (E.D.N.Y.1987); *Wheeler,* 639 F.Supp. at 1380.

Respondent argues that the petitioner "precipitat[ed] further delay" by failing to approve for filing the brief O'Connor had sent him in June 1989. Respondent's Memorandum at 5. Respondent apparently has ignored the delay which preceded June 1989. Moreover, respondent fails to indicate what steps, if any, O'Connor had taken since June 1989 to gain petitioner's approval of the brief, after petitioner had written O'Connor seeking an explanation of perceived inadequacies in the brief. Notwithstanding petitioner's insistence that he have the opportunity to review the brief before filing, and that O'Connor include in the brief a number of points he wanted raised, based on the record, this Court finds that the petitioner neither significantly obstructed O'Connor's ability to perfect

the appeal nor significantly contributed to the delay.

As for petitioner's attempts to perfect the appeal, the record indicates that the petitioner had written to O'Connor on several occasions to determine the progress of the appeal. Moreover, by letter dated June 25, 1989, petitioner wrote the Appellate Division to determine whether the brief had been filed and to complain about the difficulties he had had in contacting O'Connor. Based on the record, the Court concludes that the petitioner made reasonable attempts to perfect the appeal, and that the petitioner's conduct did not amount to a waiver of his right to due process. *See Wheeler*, 639 F.Supp. at 1380.

█ In assessing the prejudice to the petitioner caused by the appellate delay, three interests have been identified: (1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting outcome of their appeal; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired. *Rheuark v. Shaw*, 628 F.2d 297, 303 n. 8 (5th Cir.1980), *cert. denied*, 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 365 (1981); *Anarah v. Val Kriele*, No. 88–4917, 1989 WL 19140 (S.D.N.Y. Mar. 1, 1989) (LEXIS, Genfed library, Dist file). These interests are analogous to those served by the right to a speedy trial as enunciated by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 532, 92 S.Ct. 2182, 2193, 33 L.Ed.2d 101 (1972). However, as this Court has stated: "In a case involving a delay on appeal, these concerns are less likely to prejudice a defendant." *Wheeler*, 639 F.Supp. at 1379 (citing *Cousart v. Hammock*, 580 F.Supp. 259 (E.D.N.Y.), *aff'd*, 745 F.2d 776 (2d Cir.1984)).

Here, on the one hand, the Court realizes the inherent impairment to petitioner's ability to present a defense at a retrial caused by the passage of time, and that the more than three-and-one-half years delay has undoubtedly caused petitioner some needless anxiety and concern. *See Harris*, 601 F.Supp. at 994. On the other hand, however, the Court notes that the petitioner has not pointed to any witnesses or evidence now unavailable due to the delay, and that the petitioner has served less than four years of the twelve and one-half to twenty-five years of his sentence. *Wheeler*, 639 F.Supp. at 1381. On balance, the Court finds the prejudice to the petitioner appreciable, but not substantial.

A factor this Court has also considered is how soon the state appellate court will decide the appeal. Because the District Attorney will soon file its brief, and the appeal will be set for oral argument within one month, it would be inappropriate for this Court to foreclose the state appellate court from deciding the appeal. *Id.; Harris*, 601 F.Supp. at 994.

## CONCLUSION

After considering the time period of the delay, the reason for the delay, the conduct of the petitioner, the prejudice to the petitioner, and the interests of federal-state judicial comity, this Court concludes that the petitioner has been denied his constitutional right to due process of law. Accordingly, the petition for a writ of habeas corpus is granted. This Court directs that the petitioner be retried unless the appeal is heard or submitted within sixty days of the date of this Order, and decided within ninety days of the date it is heard or submitted. Any adjournments requested by or delays attributable to the petitioner are to be excluded from these periods.

SO ORDERED.