Howard CAMERON, Petitioner,

v.

Eugene S. LEFEVRE, Superintendent, Franklin Correctional Facility, Respondent.

No. 94–CV–3310 (JS).

United States District Court, E.D. New York.

May 22, 1995.

Jan Hoth–Uzzo, Associate Appellate Counsel, Legal Aid Soc., New York City, for petitioner.

Charles J. Hynes, Dist. Atty., Kings County by Jodi L. Mandel, Asst. Dist. Atty., Brooklyn, NY, for respondent.

## MEMORANDUM AND ORDER

SEYBERT, District Judge:

Petitioner Howard Cameron seeks a writ of habeas corpus from this Court pursuant to 28 U.S.C. § 2254. Petitioner was convicted in 1991, after two jury trials, of criminal possession of a weapon in the third degree (N.Y. Penal Law § 265.02(4)). As a second felony offender, he is presently serving a three-and one-half to seven-year term of imprisonment.

In his application for collateral relief, petitioner raises two claims. First, he contends that he has been denied his right to appeal, in violation of his due process and equal protection rights, due to an inability to perfect his appeal for almost four years. More specifically, petitioner contends that the court stenographer at his second trial failed to transcribe portions of the trial minutes, and that this failure should be attributable to the State of New York. Second, petitioner asserts that a reconstruction hearing ordered by the New York State Supreme Court, Appellate Division, Second Department, will only serve to delay further the perfection of his appeal. This second claim, however, is no longer relevant, as the Court was informed by the parties, in a letter dated January 30, 1995, that no reconstruction hearing would take place.

Having reviewed the submissions of both of the parties, and the available record of the state court proceedings, the writ is hereby granted to the extent set forth below.

## BACKGROUND

Petitioner was charged on August 17, 1990 with one count of criminal possession of a weapon in the third degree, pursuant to N.Y. Penal Law § 265.02(4). A first trial, before the Honorable Gloria Goldstein in New York State Supreme Court, Kings County, was held from March 11 through March 14, 1991. After a full day of deliberations, the jury informed the court that it was deadlocked, and Judge Goldstein declared a mistrial.

A second jury trial, again presided over by Judge Goldstein, was held from April 17 through April 23, 1991. On April 23, the jury found petitioner guilty of criminal possession of a weapon in the third degree. On May 12, Judge Goldstein sentenced petitioner to a term of three-and one-half to seven-years imprisonment. Petitioner remains incarcerated at the Franklin Correctional Facility pursuant to this judgment of conviction.

On May 22, 1991, petitioner filed a timely notice of appeal with the New York State Supreme Court, Appellate Division, Second Department. By order of the Appellate Division on July 19, 1991, petitioner was granted leave to prosecute his appeal as a poor person. The Appellate Division ordered the trial court stenographer to furnish promptly the trial transcripts to the Kings County Supreme Court Clerk.

According to the parties, the following were provided to petitioner: the minutes from hearings conducted on February 28 and March 1, 1991; the trial minutes from April 18, consisting of the parties' opening statements (including the court's sustainment of a prosecution objection as to the scope of the defense witness's testimony), the prosecution's entire case and another evidentiary ruling by the court restricting the scope of the defense witness's testimony; the trial minutes from April 23, consisting of the taking of the verdict; and the sentencing minutes from May 12. It is not clear from the record when exactly the foregoing minutes were provided to petitioner.

The following were not provided to the petitioner until November 30, 1994: the trial minutes from April 19, consisting of the en-

tire defense case (including possible further discussion on the scope of the defense witness's testimony), the parties summations and the jury instructions; and the minutes from April 22, which may have included the court's responses to numerous jury notes. Attempts to obtain the transcripts from these two days proved problematic due to the failure of the trial court stenographer, Ed Finnerty, to transcribe the minutes in a timely manner. What ensued was a flurry of communications between the Kings County Court Reporter's Office, Ed Finnerty, the Appellate Division, and the Legal Aid Society (the "Society"), the latter of which had been appointed as petitioner's appellate counsel.

After Finnerty failed to transcribe the missing minutes, the Kings County Court Reporter's Office began requesting the transcripts from him on a monthly basis beginning in November 1991. Subsequent requests were made on December 10, 1991, January 3, 1992 and April 7, 1992, and in May, June, and July 1992.

At the same time, the Appellate Division Clerk, Martin H. Brownstein, first contacted the Society on January 20, 1992 to inquire as to the reason petitioner's appeal had not been perfected. The Society replied on January 29, 1992 that it had not yet received the full record. Brownstein sent a similar letter on April 20, 1992. The Society replied on May 7, 1992 that it had contacted the Kings County Appeals Clerk to request the minutes. Brownstein subsequently sent letters to the Society on July 20, September 18, November 17, and January 11, 1993. The Society responded to each of these inquiries in turn. On July 24, 1992, the Society notified Brownstein that it was having "difficulty with the same court reporter in other cases," and would pursue contempt proceedings against the reporter if it did not receive the minutes "shortly."

On October 8, 1992, the Society informed Brownstein that it had served a Demand for Compliance (the "Demand") on Finnerty, and that Finnerty had promised to file the minutes "shortly." The Demand was in fact served on Finnerty on August 17, 1992. On October 16, 1992, Finnerty apparently told the Society that he was not the court report-er assigned to the trial on the dates for which transcripts were missing, and signed an undated affidavit to that effect. According to the Society, however, Finnerty conceded on November 10, 1992 that he was in fact the reporter on those dates. On November 19, 1992, the Society again informed Brownstein that they should have the minutes "shortly." On January 15, 1993, the Society told Brownstein that the Kings County Chief Court Reporter had rejected the minutes filed by Finnerty, and that the Society was preparing contempt proceedings. Finnerty was subsequently terminated. Apparently, however, the Demand that the Society had served on Finnerty on August 17, 1992 had mistakenly listed the wrong dates, and the Society reserved the Demand on February 17 and 19, 1993.

On March 16, 1993, the Society filed a motion to hold Finnerty in contempt, which was granted by order of the Appellate Division on May 11, 1993. The order gave Finnerty thirty days to purge himself of the contempt by filing the minutes in question with the Kings County Supreme Court Clerk. Finnerty did not produce the missing minutes. On July 13, 1993, the Society served Finnerty with a motion to punish him for his contempt. On November 4, 1993, the Appellate Division again held him in contempt, this time fining him $250.00 and sentencing him to 30 days imprisonment. Finnerty served his sentence at the Bronx House of Detention from December 2 through December 31, 1993. Following Finnerty's incarceration, the Kings County Court Reporter's Office told the Society that Finnerty still had possession of the missing notes. The Society attempted to phone Finnerty on March 15, 1994, but found his phone to be out of order.

Having failed to secure the missing minutes, the Society filed a motion for summary reversal with the Appellate Division on March 31, 1994, seeking to vacate the judgment against petitioner or, in the alternative, to be granted a reconstruction hearing. Subsequent to the summary reversal motion, Jodi A. Catalano, the Kings County Assistant District Attorney who responded to the motion, spoke to the Kings County Principal Court Reporter, Steven Forleo, who advised

her that he had attempted to reach Finnerty on numerous occasions. Catalano herself also unsuccessfully tried to reach Finnerty. On May 26, 1994, the Appellate Division denied petitioner's motion for summary reversal, but referred the matter to the Kings County Supreme Court for a reconstruction hearing.

Petitioner, initially proceeding *pro se*, filed the instant petition for a writ of habeas corpus on July 13, 1994. The Society informed the Court on October 28, 1994 that it intended to file supplemental materials in support of petitioner's application. Those materials were filed on November 30, 1994.

In a letter dated January 30, 1995, the parties informed the Court that Finnerty finally released his notes from the trial on September 30, 1994 and that these were transcribed on November 30. Only the minutes from the *voir dire* proceedings remained missing. The letter further advised that on January 19, 1995, Kings County Supreme Court Justice Lewis Douglass determined that the *voir dire* proceedings could not be reconstructed. The parties also indicated that they were proceeding with petitioner's appeal and expected the Appellate Division to hear the case on an expedited basis.

The procedural history of this case having been set forth above, the Court now turns to address whether it may reach the merits of petitioner's claims.

## DISCUSSION

### I. *Exhaustion*

■ Under 28 U.S.C. § 2254, a federal court may not review the substantive merits of an applicant's claim for collateral relief unless "the applicant has exhausted the remedies available in the courts of the state." 28 U.S.C. § 2254(b) (1988); *see Rose v. Lundy*, 455 U.S. 509, 510, 102 S.Ct. 1198, 1199, 71 L.Ed.2d 379 (1982); *Picard v. Connor*, 404 U.S. 270, 275–76, 92 S.Ct. 509, 512–13, 30 L.Ed.2d 438 (1971). This requirement is not a jurisdictional limitation, but is predicated on principles of judicial comity, and is "designed to protect the state courts' role in the enforcement of federal law and [to] prevent [the] disruption of state judicial proceed-

ings." *Rose*, 455 U.S. at 518, 102 S.Ct. at 1203.

The habeas statute further provides that exhaustion of state remedies is not necessary if "there is either an absence of available state corrective processes or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." 28 U.S.C. § 2254(b); *see Mathis v. Hood*, 851 F.2d 612, 614 (2d Cir.1988) ("Mathis I"). In the case at bar, the second clause of this exception is at issue. More specifically, the question is whether the process afforded by the Appellate Division in seeking to secure the missing minutes failed under the circumstances to protect effectively petitioner's rights.

Pursuant to the statutory exception to the exhaustion requirement, the courts of the Second Circuit have waived exhaustion where, as here, a prisoner's appeal has languished in the state court for an excessive period of time and the prisoner's efforts to have his appeal heard have been to no avail. *See Simmons v. Reynolds*, 898 F.2d 865, 867 (2d Cir.1990) (where a six-year delay occurred and petitioner's and his family's efforts to obtain new counsel had been futile); *Brooks v. Jones*, 875 F.2d 30, 31 (2d Cir.1989) (where an eight-year delay resulted from petitioner's inability to assemble the complete record for his appeal due to the inexcusable neglect of assigned counsel); *Mathis I*, 851 F.2d at 614 (where a five-and one-half year delay occurred due to petitioner's inability to obtain timely assistance in filing his appeal from assigned counsel); *Geames v. Henderson*, 725 F.Supp. 681, 684 (E.D.N.Y. 1989) (where a three-and one-half year delay resulted from same circumstances); *Gimenez v. Leonardo*, 702 F.Supp. 43, 45 (E.D.N.Y. 1988) (where a three-and one-half year delay resulted from same circumstances as in *Mathis I*); *Wheeler v. Kelly*, 639 F.Supp. 1374, 1377–78 (E.D.N.Y.1986) (where a five-year delay resulted from appointed counsel's loss of trial transcripts), *aff'd*, 811 F.2d 133 (2d Cir.1987).

While the Second Circuit has not "define[d] precisely, a specific interval of time after which a habeas petition based on delay of a state prisoner's appeal would excuse the

exhaustion requirement," it has specifically counseled that "[t]he doctrine of exhaustion does not require a prisoner to wait six years . . . or even three or four years before enlisting federal aid to expedite an appeal." *Simmons*, 898 F.2d at 870; *see also Diaz v. Henderson*, 905 F.2d 652, 654 (2d Cir.1990) ("habeas petitions . . . need to be brought as soon as the appellate delay becomes unreasonable . . ."); *cf. Harris v. Champion*, 15 F.3d 1538, 1556 (10th Cir.1994) ("delay in adjudicating a direct criminal appeal beyond two years from the filing of the notice of appeal gives rise to a presumption that the state appellate process is ineffective."); *Coe v. Thurman*, 922 F.2d 528, 531 (9th Cir.1990) (in a case involving a more than three-year delay in processing an appeal, in part due to delay in transcribing the trial record, "a prisoner need not fully exhaust his state remedies [since] the root of his complaint is his inability to do so."); *Shelton v. Heard*, 696 F.2d 1127, 1128–29 (5th Cir.1983) ("exhaustion is not required when the state procedures do not afford swift vindication") (quoting *Galtieri v. Wainwright*, 582 F.2d 348, 354 n. 12 (5th Cir.1978) (*en banc* )).

Where as here, the actions of the court stenographer, an officer of the state courts, are chargeable to the state,[1] the delay in processing petitioner's appeal is now nearly four years and petitioner, through his counsel, has made numerous efforts to advance his appeal, the Court must conclude that the state processes in place have been ineffective to protect petitioner's rights. Accordingly, petitioner is excused from being required to exhaust his state remedies.[2]

Although this Court holds that exhaustion is waived, petitioner's motion to vacate his conviction brought before the Appellate Division may nevertheless have satisfied the exhaustion requirement. *Cf. Brooks*, 875 F.2d at 31; *Mathis I*, 851 F.2d at 613–14 (both cases overturning district court holdings that exhaustion not satisfied where petitioners failed collaterally to attack convictions in the state courts). Although in *Mathis I*, 851 F.2d at 614, the Second Circuit expressed uncertainty as to whether a writ of *coram nobis* was available under New York law to bring a pattern of neglect and delay to the attention of the Appellate Division, in the instant case, petitioner sought such a remedy. Furthermore, no problem is posed by the failure of the petitioner in the instant case to seek leave to appeal the Appellate Division's denial of his motion to vacate to the Court of Appeals, as the denial was not appealable. *See Lloyd v. Walker*, 771 F.Supp. 570, 573 (E.D.N.Y.1991).

Having concluded that the doctrine of exhaustion does not prevent this Court from reviewing petitioner's claim, the Court now proceeds to address the merits of the petition.

## II. *The Due Process and Equal Protection Claims*

■ "Although there is no due process right to an appeal, when a state does provide for an appeal, that appeal must accord with due process . . ." *Simmons*, 898 F.2d at 868; *see Evitts v. Lucey*, 469 U.S. 387, 393–94, 105 S.Ct. 830, 834–35, 83 L.Ed.2d 821 (1985). This necessarily requires " 'that an appeal be heard promptly.' " *Elcock v. Henderson*, 947 F.2d 1004, 1007 (2d Cir.1991) ("Elcock I") (quoting *Mathis v. Hood*, 937 F.2d 790, 794 (2d Cir.1991) ("Mathis II")); *see also Cody v. Henderson*, 936 F.2d 715, 719 (2d Cir.1991) (an appeal must be "reasonably timely"). In *Barker v. Wingo*, 407 U.S. 514, 530–33, 92 S.Ct. 2182, 2191–93, 33 L.Ed.2d 101 (1972), the United States Supreme Court set out a balancing of factors test to determine whether a petitioner's constitutional right to a speedy trial has been violated. Subsequent to that decision, the courts of this circuit incorporated those factors into the context of an appellate delay claim. *See Elcock v. Henderson*, 28 F.3d 276, 279 (2d Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 456, 130

---

1. *See infra* page 430 for a fuller discussion of this point.

2. The fact that the Appellate Division is now moving forward with petitioner's appeal does not preclude the Court from hearing petitioner's unexhausted appellate delay claim. *See Geames*, 725 F.Supp. at 684; *Wheeler*, 639 F.Supp. at 1377–78 (both cases waiving exhaustion requirement and hearing petitioners' appellate delay claims on the merits, even though both appeals were *sub judice* ).

L.Ed.2d 364 (1994); *Simmons*, 898 F.2d at 868; *Brooks*, 875 F.2d at 31; *Wheeler*, 639 F.Supp. at 1378. The rationale for using the *Barker* factors in the appellate context is that "the reasons for constraining appellate delay are analogous to the motives underpinning the right to a speedy trial." *Wheeler*, 639 F.Supp. at 1378. *But see Cody*, 936 F.2d at 719 ("Certainly, the differences in a defendant's situation before trial and after conviction suggest that at the very least the *Barker* factors should not be applied uncritically.").

The factors identified in *Barker*, 407 U.S. at 530, 92 S.Ct. at 2191–92, that are to be considered where appellate delay is claimed as grounds for habeas relief include: the length of the appellate delay, the reason for the delay, petitioner's assertion of his right to a speedy appeal and the prejudice to petitioner caused by the delay. *See Elcock I*, 947 F.2d at 1007; *Simmons*, 898 F.2d at 868; *Brooks*, 875 F.2d at 31. In addition to the *Barker* factors, federal-state judicial comity has been added as a fifth factor. *See Brooks*, 875 F.2d at 32; *Sinatra v. Barkley*, 741 F.Supp. 39, 41 (E.D.N.Y.1990); *Geames*, 725 F.Supp. at 685; *Gimenez*, 702 F.Supp. at 47. *Wheeler*, 639 F.Supp. at 1378. In considering the foregoing factors in the context of the right to a speedy trial, the *Barker* court stated:

> [W]e regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.

*Barker*, 407 U.S. at 533, 92 S.Ct. at 2193; *see Simmons*, 898 F.2d at 868. With this in mind, the Court will proceed to apply these factors to the circumstances surrounding the instant application.

## A. *The Length of the Delay*

■ The *Barker* court stated that the "length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial,

there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192. In the present case, petitioner was sentenced on May 12, 1991 to a term of three-and one-half to seven-years imprisonment. He filed a notice of appeal on May 22, 1991. Petitioner has thus been unable to perfect his appeal for almost four years.

Respondent correctly notes that the delay in the present case is much shorter than the eight-year delay in *Brooks*, where the court granted a writ of habeas corpus directing the release of that petitioner unless his appeal was heard within sixty days. 875 F.2d at 32. Other courts in this circuit, however, have found shorter delays problematic. *See Simmons*, 898 F.2d at 868 (six-year delay "clearly excessive"); *Mathis I*, 851 F.2d at 614 (six-year delay "shocking"); *Einaugler*, 862 F.Supp. at 799 (16– to 18–month delay indicative of due process violation); *Yourdon v. Kelly*, 769 F.Supp. 112, 115 (W.D.N.Y.1991) (four-year delay "unreasonable") *Sinatra*, 741 F.Supp. at 41 (two-and one-half-year delay "substantial enough to approach 'presumptively prejudicial'") (quoting *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192); *Geames*, 725 F.Supp. at 685 (three-and one-half-year delay excessive); *Simmons v. Reynolds*, 708 F.Supp. 505, 509 (E.D.N.Y.1989) (six-year delay "patently excessive"), *aff'd*, 898 F.2d 865 (2d Cir.1990); *Wheeler*, 639 F.Supp. at 1379 (five-year delay). A review of the other circuits indicates that delays ranging from fifteen months to four years have all been held substantial enough to warrant inquiry into possible due process violations. *See, e.g., Lennox v. Ravitz*, No. 92–5100, 1992 WL 372594, at *3, 1992 U.S.App. LEXIS 33374, at *8 (10th Cir. Dec. 18, 1992) (delay of fifteen months gives rise to " 'grave concerns in the realm of due process' ") (quoting *Prescher v. Crouse*, 431 F.2d 209, 211 (10th Cir.1970)); *Burkett v. Fulcomer*, 951 F.2d 1431, 1446 (3d Cir.1991) (eighteen month delay between sentencing and appellate decision "weigh decidedly against the government"), *cert. denied*, —— U.S. ——, 112 S.Ct. 3055, 120 L.Ed.2d 921 (1992); *Coe*, 922 F.2d at 531 (four year delay "alarming").

Only one court in this circuit has attempted to create a specific formula in evaluating whether the length of an appellate delay is inherently prejudicial. In *Harris v. Kuhlman*, 601 F.Supp. 987, 993 (E.D.N.Y.1985), the court held that a delay is presumed prejudicial when the length between conviction and perfection of an appeal exceeds fifty percent of a petitioner's sentence. The court in *Wheeler*, 639 F.Supp. at 1379, declined to adopt this rule on the theory that it would focus the state courts' time and resources on the appeals of prisoners with shorter sentences, to the detriment of those with longer ones. Other courts have also declined to adopt a pat rule in determining an unreasonable period of delay. *See Coe*, 922 F.2d at 532 (rejecting *Harris* rule and suggesting it was implicitly overruled by the Second Circuit's affirmance of *Wheeler*); *Yourdon*, 769 F.Supp. at 115 ("there is no set formula for determining whether a particular delay is excessive"); *Geames*, 725 F.Supp. at 685 ("This court has previously rejected any notion that when the delay in deciding the direct appeal exceeds some fixed percentage of the sentence, it is per se excessive."); *Gimenez*, 702 F.Supp. at 46. Nevertheless, the *Wheeler* court held that the length of a prisoner's sentence was still a factor in finding excessive delay. *Id.* at 1379; *see Simmons*, 708 F.Supp. at 509 (petitioner's serving more than two-thirds of his minimum sentence was factor in finding appellate delay "patently excessive").

In the instant case, the length of the delay in hearing petitioner's appeal is clearly substantial enough to warrant inquiry into the remaining factors. While there is no clear-cut rule in determining excessiveness, the failure of the state to deliver the complete transcript of petitioner's second trial to him for over three-and one-half years cannot be justified. Having found the delay of petitioner's appeal unreasonable, the Court will proceed to the remaining factors.

## B. The Reason for the Delay

It is clear from the record that the reason for the delay in perfecting petitioner's appeal was the trial court stenographer's failure to transcribe certain portions of the trial minutes. Petitioner argues that this failure should be attributed to the State of New York. Respondent rebuts that the state should not be responsible, noting that the Appellate Division took substantial measures to attempt to alleviate the delay.

■ There is merit to petitioner's claim. Pursuant to the United States Constitution, a state has an obligation "to provide trial transcripts, or an acceptable substitute, to appellants who are unable to pay for them." *Ennis v. LeFevre*, 560 F.2d 1072, 1074 (2d Cir. 1977), *cert. denied*, 435 U.S. 976, 98 S.Ct. 1625, 56 L.Ed.2d 70 (1978); *see Griffin v. Illinois*, 351 U.S. 12, 19, 76 S.Ct. 585, 590–91, 100 L.Ed. 891 (1956). A transcript must afford "a 'record of sufficient completeness' to permit proper consideration of [an indigent's] claims." *Draper v. Washington*, 372 U.S. 487, 499, 83 S.Ct. 774, 781, 9 L.Ed.2d 899 (1963) (quoting *Coppedge v. United States*, 369 U.S. 438, 446, 82 S.Ct. 917, 921–22, 8 L.Ed.2d 21 (1962)). New York State has undertaken this constitutional obligation by automatically providing transcripts of criminal trial court proceedings to indigent defendants for purposes of appeal. *See* N.Y.Crim.Pr.L. § 460.70 (McKinney 1994).

In the instant case, petitioner was granted leave to prosecute his direct appeal as a poor person by order of the Appellate Division dated July 19, 1991. The order directed the trial court reporter, Ed Finnerty, to file promptly two certified transcripts of the trial minutes with the clerk of the trial court, who would thereby furnish a copy to appellant free of charge, pursuant to Section 460.70. As was noted in the aforesaid factual history of the case, however, portions of the minutes remained untranscribed for over three-and one-half years, primarily due to the gross negligence and incompetence of the court stenographer.

The question then arises whether Mr. Finnerty's outrageous behavior should be attributed to the State of New York. To this end, the Court again refers to *Barker*. The *Barker* court noted that "[a] deliberate attempt to delay the trial" by the government would weigh heavily against it. *Id.* at 531, 92 S.Ct. at 2192. It went on to state that "[a] more neutral reason [for the delay] such as negli-

gence or overcrowded courts should be weighted less heavily [against the government] but nevertheless should be considered since *the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." Id.* (emphasis added). Pursuant to N.Y.Jud.Law § 290 (McKinney 1983), Ed Finnerty, as a stenographer employed by New York's Unified Court System, was an officer of the state court. As such, he was required to subscribe to a constitutional oath of office, take complete stenographic notes of all proceedings he appeared at, file original stenographic notes with the clerk of the court when directed by the court to do so, and furnish "with reasonable diligence" a copy of all testimony and proceedings, upon request, to a defendant. *See* N.Y.Jud.Law §§ 294, 295, 296, 302 (McKinney 1983).

Finnerty plainly violated his statutory directives in the instant case. As an officer of the court, Finnerty's conduct falls under the general category of negligence by court personnel, and his actions are therefore attributable to the state. *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192; *see People v. Charles,* 180 A.D.2d 868, 580 N.Y.S.2d 99, 102 (3d Dep't 1992) (court reporter's tardiness falls within general category of delay caused by personnel which "while weighing less heavily against the prosecution, nevertheless is chargeable against the State"); *Espinoza v. Pontesso,* No. 92–55948, 1993 WL 138996, at *1–2, 1993 U.S.App. LEXIS 10440, at *4 (9th Cir. May 3, 1993) (court reporter's dilatoriness attributable to the state); *Morgan v. Thomas,* No. 92–15038, 1992 WL 161036, at *1, 1992 U.S.App. LEXIS 16640, at *3 (9th Cir. July 13, 1992); *Coe,* 922 F.2d at 531; *see also Delancy v. Caldwell,* 741 F.2d 1246, 1247 (10th Cir.1984) (excessive delay in providing trial transcript can amount to a due process violation); *Rheuark v. Shaw,* 628 F.2d 297, 302 (5th Cir.1980) (due process can be denied by failure to transcribe testimony necessary for completion of appellate record), *cert. denied,* 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 365 (1981).

Mitigating state responsibility, however, is what this Court considers to be the reasonable diligence exercised by the Appellate Division in seeking to rectify the situation. As was expounded at length in the factual history, and as respondent points out, the Appellate Division was in constant contact with the Society as to the status of the missing minutes. The Appellate Division ultimately held the court reporter in contempt and later punished him for his contempt with a jail sentence. The Appellate Division's close supervision in this case is in direct contrast to many of the other appellate delay claims brought in this circuit. *See, e.g., Simmons,* 898 F.2d at 868 (delay caused in part by "state court's failure to supervise its appointed attorneys and to monitor its own calendar"); *Mathis I,* 851 F.2d at 615 (noting that further attempts by petitioner to request his appeal be heard would have been futile; he had brought the delay to the attention of the First Department "on numerous occasions"); *Wheeler,* 639 F.Supp. at 1379 (delay compounded by "inability of the Appellate Division to keep track of its unperfected appeals"). Nevertheless, the failure of the state in this case to produce the trial minutes short of a contempt proceeding cannot be condoned.

Considering the totality of the circumstances, the reason for the delay in hearing petitioner's appeal weighs somewhat in his favor.

### C. *Petitioner's Assertion of His Right to a Speedy Appeal*

From the record, petitioner was certainly diligent in seeking to secure the missing minutes he needed to perfect his appeal. His appellate counsel was in constant contact with the Kings County Criminal Appeals Bureau, the Court Reporter's Office, the Appellate Division, and even Finnerty himself. In addition, the Society served Finnerty with a Demand for Compliance and ultimately successfully motioned to hold him in contempt and punish him for his conduct.

Respondent asserts that petitioner unjustifiably waited one- and one-half years before filing his contempt motion. Petitioner states, however, and respondent does not rebut, that it typically takes six to twelve months for a typical criminal record to be transcribed. Furthermore, it is not at all clear from the record that bringing the contempt motion earlier could have been thought necessary.

First, petitioner states that there was confusion as to whether Finnerty was responsible for the missing minutes. Second, petitioner was led to believe that the minutes were being transcribed. Finnerty had in fact submitted the missing minutes, which were subsequently rejected by the Kings County Chief Court Reporter. In any event, the alleged tardiness of petitioner's contempt motion is certainly not dispositive on the issue of whether petitioner asserted his right to a speedy appeal.

Based on the record, petitioner made reasonable efforts to secure the missing trial minutes needed to perfect his appeal. His efforts cannot in any way be construed as a waiver of his due process right to a speedy appeal. *See Mathis II*, 937 F.2d at 794 ("If the defendant does not act quickly to require that his appeal be heard, he cannot later argue that he is entitled to release because the state court took too long to hear his appeal."); *Sinatra*, 741 F.Supp. at 42; *Geames*, 725 F.Supp. at 686; *Wheeler*, 639 F.Supp. at 1380.

### D. *Prejudice to Petitioner's Appeal*

■ In determining whether there has been prejudice to petitioner's direct appeal, the Court is required to look to the interests that the due process right to a timely appeal is designed to protect. These interests, enunciated in *Barker* in the context of the right to a speedy trial, have been reformulated in the appellate delay context. By analogy, they are: "(1) to prevent oppressive post-trial incarceration, should the appeal ultimately prove successful; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the appeal and any resulting retrial will be compromised by the passage of time." *Simmons v. Reynolds*, 708 F.Supp. at 510; *see Coe*, 922 F.2d at 532; *Rheuark*, 628 F.2d at 303 n. 8; *Sinatra*, 741 F.Supp. at 42; *Geames*, 725 F.Supp. at 686. In a appellate delay claim, however, as opposed to a speedy trial claim, "these concerns are less likely to prejudice a defendant." *Wheeler*, 639 F.Supp. at 1380 (citing *Cousart v. Hammock*, 580 F.Supp. 259, 269 (E.D.N.Y. 1984), *aff'd*, 745 F.2d 776 (2d Cir.1984)); *see also Geames*, 725 F.Supp. at 686.

The Court is unwilling to term petitioner's post-trial incarceration oppressive, since the Appellate Division has not yet heard petitioner's appeal. If petitioner's appeal is fairly affirmed, any injury he may have suffered "does not involve any illegal deprivation of liberty." *Cody*, 936 F.2d at 720; *see Simmons*, 708 F.Supp. at 510 ("[If] petitioner's conviction is affirmed, his incarceration is lawful."). To find that petitioner's incarceration is oppressive at this point would be speculative. As Chief Judge Newman recently noted, federal courts are not always successful predictors of state law. *See Jameson v. Coughlin*, 22 F.3d 427, 430 n. 2 (2d Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 232, 130 L.Ed.2d 156 (1994).

As to the second factor, namely the anxiety and concern suffered by petitioner, it should first be noted that "the need to protect a person who has been convicted of a crime, but who appeals from his conviction, against anxiety ... is considerably weaker [than the need to protect a person awaiting trial]," *Cousart*, 580 F.Supp. at 269; *see Wheeler*, 639 F.Supp. at 1381, because a convicted person "is not entitled to [a] presumption of innocence," *Cousart*, 580 F.Supp. at 269. Nevertheless, petitioner has undoubtedly suffered some anxiety and concern as a result of the almost four-year delay in his appeal, particularly in light of his relatively short sentence. *See Yourdon*, 769 F.Supp. at 115 (it would not be "unusual" that "a four-year delay must profoundly worry an individual hopefully awaiting a successful outcome of his appeal."); *Geames*, 725 F.Supp. at 686; (three-and one-half year delay "has undoubtedly caused petitioner some needless anxiety and concern"); *Harris*, 601 F.Supp. at 994 (in case involving seven-and one-half year delay, "petitioner clearly suffered severe anxiety and concern" even though petitioner's state claims suggested "very little chance of reversal."); *cf. Wheeler*, 639 F.Supp. at 1381 (noting that petitioner had served only a short portion of a relatively long sentence).

The third and most important factor in assessing prejudice is the possible impairment of petitioner's direct appeal, or defense upon retrial, occasioned by the delay. *See Barker*, 407 U.S. at 532, 92 S.Ct. at 2193; *Wheeler*, 639 F.Supp. at 1381. In the instant case, petitioner makes no allegation that the delay has impaired his direct appeal. His primary assertion is that his defense would

be impaired should the Appellate Division order a retrial. The Court recognizes the inherent impairment of a defense upon retrial caused by the passage of time, namely the dimming of witness's memories and the staling of evidence. *See Coe,* 922 F.2d at 532; *Rheuark,* 628 F.2d at 303 n. 8; *Geames,* 725 F.Supp. at 686; *Wheeler,* 639 F.Supp. at 1381; *Harris,* 601 F.Supp. at 994; *cf. Sinatra,* 741 F.Supp. at 42 (suggesting petitioner required specifically to allege facts demonstrating how defenses would be impaired on retrial) *with Barker,* 407 U.S. at 532, 92 S.Ct. at 2193 ("Loss of memory ... is not always reflected in the record because what has been forgotten can rarely be shown.").

Furthermore, petitioner has specifically alleged that he is unable to locate the only defense witness that testified at trial. In the context of the initial right to a speedy trial, the Supreme Court has indicated that the prejudice resulting from the loss of a witness "is obvious." *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193. Petitioner has not, however, asserted what efforts he has made to locate this witness. It is, therefore, uncertain that this witness would in fact be unavailable at any retrial. Moreover, "it is purely speculative whether the loss of [this] witness[ ] was in fact caused by the delay in the perfection of the appeal; it is quite possible that the witness[ ] [would have become] unavailable prior to the point in time at which a retrial would have been held" had no delay occurred. *Cousart,* 580 F.Supp. at 269. It is also unclear whether the Appellate Division will reverse the trial court's ruling that limited the testimony of this witness.

Thus, while the Court recognizes that the passage of time may have caused petitioner some degree of anxiety and resulted in some impairment of his ability to present a defense at any retrial, on balance, the Court finds the prejudice to be appreciable but too speculative to be considered substantial.

### E. *Federal–State Judicial Comity*

The last factor to be considered is the effect federal intervention will have on federal-state judicial comity. This necessarily requires an inquiry into "how soon the state appellate court will decide the appeal." *Wheeler,* 639 F.Supp. at 1381; *see Sinatra,* 741 F.Supp. at 42.

The parties have advised the Court that the Appellate Division will hear petitioner's appeal sometime in June of this year. This is dependent upon the submittal of both of the parties' briefs by the beginning of May, at the latest. Petitioner has advised the Court that he will have his brief filed by the end of March, and respondent has stated that its brief will be filed within thirty days thereafter. Since petitioner's appeal will soon be *sub judice,* comity dictates that it would be inappropriate for this Court to foreclose the Appellate Division from deciding petitioner's appeal. *See Brooks,* 875 F.2d at 32; *Ralls v. Manson,* 503 F.2d 491, 494 (2d Cir.1974); *Geames,* 725 F.Supp. at 686; *Gimenez,* 702 F.Supp. at 47; *Wheeler,* 639 F.Supp. at 1381; *Harris,* 601 F.Supp. at 994.

### CONCLUSION

Having assessed the five foregoing factors, the Court holds that the almost four-year delay in hearing petitioner's appeal has deprived him of his due process right to a speedy appeal.

Although petitioner is not entitled to unconditional release, as the merits of his appeal have not been prejudiced, *see Cody,* 936 F.2d at 719, it does not follow that he is precluded from obtaining any relief whatsoever. The habeas statute directs that the court is to "dispose of the matter as law and justice require." 28 U.S.C. § 2243. Therefore, federal courts "may fashion appropriate relief other than immediate release." *Simmons,* 898 F.2d at 869; *see Preiser v. Rodriguez,* 411 U.S. 475, 487, 93 S.Ct. 1827, 1835, 36 L.Ed.2d 439 (1973).

The appropriate remedy in this case is to grant a conditional writ of habeas corpus directing the Appellate Division to hear petitioner's appeal within a reasonable period of time or release him. There is ample precedent in this circuit for utilization of the conditional writ. See *Diaz,* 905 F.2d at 654; *Simmons,* 898 F.2d at 869–70; *Brooks,* 875 F.2d at 32; *Einaugler,* 862 F.Supp. at 801; *Geames,* 725 F.Supp. at 686; *Wheeler,* 639 F.Supp. at 1382; *Harris,* 601 F.Supp. at 994. According to the *Simmons* court, the conditional writ is the "most appropriate remedy: it limits the time state courts may delay; it grants a prisoner the required relief, his

appeal; and it provides federal courts with an effective means to protect prisoners' rights to appeal." *Simmons,* 898 F.2d at 869–70.

Accordingly, the petition for a writ of habeas corpus is conditionally granted. The petitioner is ordered released unless the Appellate Division hears his appeal within 75 days from the date of this Order. Any adjournments requested on consent or by petitioner are to be excluded from this period.

SO ORDERED.